[No. 19486-1-I. Division One. September 6, 1988.]

JEANNE STORY, ET AL, *Appellants,* v. SHELTER BAY COMPANY, ET AL, *Respondents.*

*Robert W. McKisson, Lisa E. Schuchman,* and *McKisson & Sargent,* for appellants.

*Joel Gordon, Brent Carson,* and *Buck & Gordon,* for respondents.

*Kenneth O. Eikenberry, Attorney General, Paula Selis* and *Tina E. Kondo, Assistants,* and *Eduardo Munoz,* amici curiae for appellants.

WINSOR, J.—Jeanne Story appeals from a judgment entered against her on the defamation counterclaim of Shelter Bay Company (Shelter Co.), Allan Osberg and John Osberg.[1] We affirm in part and reverse in part, remanding this matter to the trial judge for entry of additional findings and a redetermination of damages.

Shelter Bay is a Skagit County residential housing development and marina developed in the 1970's by Shelter Co. Certain common areas of Shelter Bay are owned and managed by Shelter Bay Community, Inc., and its board of resident directors.

Story and her spouse leased or purchased a Shelter Bay lot in 1978. By approximately 1980, Story was embroiled in numerous community disputes centered upon perceived misdeeds of the developers. Story became the leading investigator for the dissident group of community residents. Her investigations led her to believe that Shelter Co. and its sales agents had acted improperly in a number of matters. She communicated her findings and beliefs orally and by letter to the community board of directors, other community residents, the Land Sales Enforcement Division of the Department of Housing and Urban Development (HUD), the Real Estate Division of the State Department of Licensing, and the Consumer Protection Division of the

---

[1] Shelter Co. is owned by Osberg Construction Co., for which counterclaimants John and Allan Osberg are principals.

State Attorney General's office. Story also advised these parties that she had taken a "theft loss" deduction on her 1981 income tax return for losses alleged to be the result of Shelter Co.'s acts and that this deduction had been allowed by the Internal Revenue Service.

In 1983, Story and several other Shelter Bay residents filed an action for specific performance and/or damages against Shelter Co. Shelter Co. and intervenors Osberg Construction, John Osberg and Allan Osberg filed a defamation counterclaim against Story.

Story filed a jury demand in November 1984. The trial court found plaintiffs' claims to be predominately equitable in nature, and ruled that all liability questions would be resolved without a jury and that, if appropriate, a jury would determine plaintiffs' damages.

The trial court entered judgment for Shelter Co. and the Osbergs on both the principal case and their defamation counterclaim. Damages totaling $3,000 were awarded the counterclaimants. Story appeals, assigning error to numerous factual findings made by the trial court, to its rulings in the areas of absolute privilege, conditional privilege, and damages, and to its denial of her request for a jury trial. The State of Washington and American Civil Liberties Union of Washington Foundation (ACLU) filed amicus briefs in Story's behalf.

### ABSOLUTE PRIVILEGE

Story first assigns error to the trial court's refusal to find her initial complaints to and subsequent communications with HUD, the State Department of Licensing, and the Attorney General, to be protected by an absolute privilege.[2] She argues that her statements to these agencies are absolutely privileged as statements made in the context of a quasi–judicial proceeding.

---

[2] In its amicus brief, the State claims an absolute privilege for Story's communications to the Consumer Protection Division of the Office of the Attorney General.

■■■ An absolute privilege protects the maker of an otherwise defamatory statement from all liability for libel or slander, and applies to statements made during the course of and relevant to quasi–judicial administrative proceedings. *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 475, 564 P.2d 1131 (1977); *Hurst v. Farmer*, 40 Wn. App. 116, 117, 697 P.2d 280, *review denied*, 103 Wn.2d 1038 (1985). The privilege does not extend to proceedings which, although official and public, are not judicial in substance, as a nonjudicial forum may lack safeguards to prevent abuse of the privilege. *Engelmohr v. Bache*, 66 Wn.2d 103, 106, 401 P.2d 346, *cert. dismissed*, 382 U.S. 950, 15 L. Ed. 2d 463, 86 S. Ct. 431 (1965); *Hurst v. Farmer, supra*. An absolute privilege is therefore allowed only in "situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct." *Twelker*, 88 Wn.2d at 476; *accord, Moore v. Smith*, 89 Wn.2d 932, 937, 578 P.2d 26 (1978); *Engelmohr*, 66 Wn.2d at 105–06; *see also King v. Borges*, 28 Cal. App. 3d 27, 104 Cal. Rptr. 414, 416–17 (1972) (because statute authorizes State Division of Real Estate to require the complainant to submit a written, verified complaint, adequate safeguard is available through perjury sanctions).

Under the Interstate Land Sales Act, 15 U.S.C. §§ 1701–20, HUD can require sworn written statements, administer oaths and affirmations, subpoena witnesses, and conduct hearings. Implicit in these powers is the power to invoke perjury sanctions against those who testify falsely. *King v. Borges, supra*. Hearings conducted by HUD under the act must adhere to the requirements of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–59. 15 U.S.C. § 1715(b). The APA empowers hearing officers to strike evidence from the record. 5 U.S.C. § 556; *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980), *cert. denied*, 452 U.S. 906, 69 L. Ed. 2d 407, 101 S. Ct. 3033 (1981).

Similarly, the Land Development Act of 1973, RCW 58.19, allows Washington's Director of Licensing to administer oaths or affirmations, require sworn written statements and subpoena witnesses. RCW 58.19.190–.240. Hearings under RCW 58.19 must be conducted in accord with the state administrative procedure act, RCW 34.04. RCW 58.19.200(4). That act expressly provides for excluding "incompetent, irrelevant, immaterial, and unduly repetitious evidence", RCW 34.04.100(1), and permits hearing officers to strike evidence. *See* WAC 10–08–140 (a witness' refusal to answer a proper question is grounds for striking all of that witness's prior testimony on related matter).

We conclude that both HUD and the Department of Licensing have authority to discipline citizen complainants for false or malicious statements and to strike improper statements from the record. We hold that HUD and the Department of Licensing can adequately safeguard against abuse of an absolute privilege. We do not extend this holding to statements made to the Attorney General's office as the Consumer Protection Act, RCW 19.86, does not grant that agency authority comparable to that of HUD and the Department of Licensing. The Attorney General argues that nevertheless, it can adequately safeguard against abuse of an absolute privilege by its impartial investigations, and by the low probability that a file will be made public. These are not sufficient safeguards to prevent abuse of an absolute privilege. *See Moore,* 89 Wn.2d at 937 (absolute privileges limited to situations in which authorities have the power both to discipline and to strike improper statements from the record); *Twelker,* 88 Wn.2d at 476–77 (absolute immunity should be limited to cases where proceedings are under control of one who may reprimand, fine and punish as well as expunge improper statement from the record); *Engelmohr,* 66 Wn.2d at 105 (the absolute privilege will be extended to administrative proceedings conducted with safeguards similar to a judicial proceeding).

Shelter Co. argues that even if HUD and the Department of Licensing can adequately safeguard against abuse of an absolute privilege, that privilege still should not protect Story's statements, as they were not made in the course of a quasi–judicial proceeding. Story's communications to these agencies consisted of her initial complaints and additional explanatory information.

Washington courts have not definitively ruled on whether defamatory statements made before the formal initiation of a lawsuit or administrative proceeding can be absolutely privileged. In *Twelker v. Shannon & Wilson, Inc., supra,* the court considered extending an absolute privilege to an allegedly defamatory prelitigation insurance report and concluded:

> Respondent has cited no case where absolute privilege has been extended to statements made prior to the initiation of a lawsuit nor has he presented public policy arguments of such a compelling nature as to justify such an extension. In the absence of such arguments we decline to apply the absolute privilege accorded statements made in the course of or preliminary to judicial proceedings to the circumstances of this case.

*Twelker,* 88 Wn.2d at 478.

Since *Twelker* was decided, authority has developed for extending the absolute privilege to initial complaints and statements made during the investigative phase of a judicial or quasi–judicial proceeding. The Restatement (Second) of Torts §§ 587, 588 (1977) provides that a party or witness to a judicial or quasi–judicial proceeding "is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial [or quasi–judicial] proceeding . . ." Comment *e* to sections 587 and 588 explains that the privilege applies to communications preliminary to a proposed proceeding when the communications have some relation to a proceeding that is actually contemplated in good faith or is under serious consideration. The Restatement's position reflects

sound public policy reasons for extending the privilege to unsolicited citizen complaints, as:

in order for the commissioner [or any agency that relies upon citizen complaints] to be effective there must be an open channel of communication by which citizens can call his attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate protection under the circumstances.

*King,* at 34.

We believe extension of an absolute privilege to Story's initial complaints and subsequent informational communications to HUD and the Department of Licensing is warranted. Each of these agencies relies on citizen complaints for reports of wrongdoing and would be hampered in their enforcement capabilities if complainants feared liability for libel. Each of these agencies can safeguard against abuse of the absolute privilege. We therefore hold that the trial court erred in refusing to find Story's defamatory statements to HUD and the Department of Licensing absolutely privileged, and remand to the trial court for a determination of the effect our holding has on the damage award.

## Qualified Privilege

Although Story's communications to the Attorney General were not absolutely privileged, they were qualifiedly privileged as communications made to a public officer or private citizen authorized or privileged to act on the matters communicated. *See Getchell v. Auto Bar Sys. Northwest, Inc.,* 73 Wn.2d 831, 836–37, 440 P.2d 843 (1968) (quoting Restatement of Torts § 598). The trial court found, however, that Story abused this qualified privilege by acting with reckless disregard as to the truth or falsity of her statements.

A qualified privilege protects the maker from liability for an otherwise defamatory statement unless it can be shown that the privilege was abused. *Bender v. Seattle,* 99 Wn.2d 582, 600, 664 P.2d 492 (1983). The burden of establishing abuse of a qualified privilege rests on the defamed

party, who must show by clear and convincing evidence the declarant's knowledge of the falsity, or his or her reckless disregard as to the falsity of the statement. *Lillig v. Becton–Dickinson,* 105 Wn.2d 653, 658, 717 P.2d 1371 (1986); *Bender,* 99 Wn.2d at 601.

Story contends the trial court erred in finding she abused her qualified privilege because it premised its reckless disregard finding on evidence of Story's negligence, rather than on evidence of actual malice. This argument is founded on the trial court's memorandum decision, which was fully incorporated by reference into the court's findings of fact and conclusions of law. That decision states in part that:

> The defendant corporation has the burden to establish by clear and convincing evidence that there was an abuse of a qualified privilege. I find that the defendant has carried that burden for I am convinced that Ms. Story did not make a fair and impartial investigation of the true facts and that she chose to believe what she wanted to believe and to infer from her investigation everything conceivable that was detrimental to the developer.

Whether reckless disregard in the defamation context is shown by a declarant's actual malice, or by his or her negligence, has been a matter of some confusion.[3] This confusion was recently put to rest in *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 107 Wn.2d 524, 530–31, 730 P.2d 1299, *cert. denied,* ___ U.S. ___, 98 L. Ed. 2d 31, 108 S. Ct. 67

---

[3]One line of cases held that proof of reckless disregard required a showing that the defendant in fact entertained serious doubts as to the truth of the statement and was not shown by a declarant's mere failure to reasonably investigate. This standard is identical to that necessary to prove the element of fault in a case concerning defamation of a public figure, *i.e.,* actual malice. *Parry v. George H. Brown & Assocs.,* 46 Wn. App. 193, 197, 730 P.2d 95 (1986); *Rye v. Seattle Times Co.,* 37 Wn. App. 45, 678 P.2d 1282, *review denied,* 102 Wn.2d 1004, *cert. denied,* 469 U.S. 1087, 83 L. Ed. 2d 703, 105 S. Ct. 593 (1984). *See also Guntheroth v. Rodaway,* 107 Wn.2d 170, 177 n.2, 727 P.2d 982 (1986); *Bender,* 99 Wn.2d at 601–02. Another line of cases stated that an abuse of a qualified privilege occurs if the defendant acted without a fair and impartial investigation or without reasonable grounds for believing in the truth of the statement, *i.e.,* negligence. *Dunlap v. Wayne,* 105 Wn.2d 529, 542, 716 P.2d 842 (1986); *Turngren v. King Cy.,* 104 Wn.2d 293, 310, 705 P.2d 258 (1985).

(1987), where the court stated that loss of a qualified privilege could only occur if the defendant acted with actual malice. The standard for finding actual malice is subjective and focuses on the declarant's belief in or attitude toward the truth of the statement at issue. *Herron v. KING Broadcasting Co.,* 109 Wn.2d 514, 523, 746 P.2d 295 (1987) (*Herron* II), *reconsideration granted* (July 12, 1988); *Tilton v. Cowles Pub'g Co.,* 76 Wn.2d 707, 722, 459 P.2d 8 (1969), *cert. denied,* 399 U.S. 927, 26 L. Ed. 2d 792, 90 S. Ct. 2238 (1970). To prove actual malice a party must establish that the speaker knew the statement was false, or acted with a high degree of awareness of its probable falsity, or in fact entertained serious doubts as to the statement's truth. *Herron* II, 109 Wn.2d at 523; *Tilton,* 76 Wn.2d at 722.

Shelter Co. argues that, taken in its entirety, the trial court's memorandum opinion indicates the court did apply the actual malice standard in finding reckless disregard. We are not persuaded by this argument. The trial court expressly based its finding of Story's abuse of her qualified privilege on its determination that Story did not make a fair and impartial investigation; *i.e.,* that Story acted negligently. Nowhere in the finding or in its memorandum decision does the trial court indicate that it found Story ever doubted the truth of her statements. On the contrary, the court concluded that Story "believed what she wanted to believe." We hold that the trial court erred by using a negligence standard to find Story acted with reckless disregard and thereby abused her qualified privilege.

Alternatively, Shelter Co. argues that any trial court error in finding reckless disregard under a negligence standard rather than under an actual malice standard is harmless, as actual malice can be inferred from the objective, circumstantial evidence in this case. Shelter Co. cites *Herron* II and *Herron v. Tribune Pub'g Co.,* 108 Wn.2d 162, 736 P.2d 249 (1987) (*Herron* I), as support for this argument. Both *Herron* I and *Herron* II were rulings on motions for summary judgments where the issue was whether the plaintiff alleged sufficient evidence to make a prima facie

showing of reckless disregard and to thereby defeat defendant's motion. In each of these cases, the Supreme Court held that individual factors[4] evidencing actual malice could be taken into account cumulatively as probative evidence of actual malice. *Herron* II, 109 Wn.2d at 524–25; *Herron* I, 108 Wn.2d at 172. Neither case involved review of a jury instruction or a finding of fact, however, and therefore neither is conclusive on this issue.

In any event, we do not interpret *Herron* I and *Herron* II as permitting a trier of fact to leap directly from evidence of cumulative individual factors to a conclusion of actual malice. Such an interpretation would nullify the subjective standard expressly adopted in *Herron* II:

> [Recovery requires] a showing that the defamatory statement was made with "actual malice"—that is, made with knowledge of its falsity or with reckless disregard of its truth or falsity. "Reckless disregard" means (1) a "high degree of awareness of . . . probable falsity" or (2) that the defendant "in fact entertained serious doubts" as to the statement's truth.
> The standard for determining "actual malice" is subjective, focusing on the defendant's belief in or attitude toward the truth of the statement . . .

(Citations omitted.) *Herron* II, 109 Wn.2d at 523. Rather, we believe that the *Herron* courts simply identified factors that a trier of fact could consider in making the necessary, preliminary finding that the declarant knew that the statement was false, or had a high degree of awareness of its probable falsity, or in fact entertained serious doubts as to the truth of the statement made. *See Herron* II, 109 Wn.2d at 526. Here, the trial court failed to make that necessary finding as to Story's subjective beliefs. Absent such a finding, it would be inappropriate for this court to do as Shelter Co. suggests and infer that Story acted with actual malice.

---

[4]The factors cited include declarant's hostility, failure to properly investigate, and knowledge that his or her sources were hostile to the plaintiff. *Herron* II, 109 Wn.2d at 524–25.

In summary, our review of the trial court's findings of fact and memorandum opinion gives no indication that the trial judge found Story entertained any doubts whatsoever as to the truth of her statements, or acted with a "'high degree of awareness of . . . probable falsity.'" *Tilton,* 76 Wn.2d at 722. The trial court's conclusion that Story abused her qualified privilege by acting with reckless disregard was therefore in error. Accordingly, we remand this issue to the trial court for entry of a finding as to Story's subjective belief, or lack thereof, as to the truth of her communications and, if warranted, for reconsideration of its conclusion that Story abused her qualified privilege. Should the trial court determine that Story did not act with actual malice and thereby abuse her qualified privilege, the award of damages must be reduced to reflect her protection from liability for communications to the Attorney General.

### COMMUNITY INTEREST PRIVILEGE

■ Story also assigns error to the trial court's finding that her communications to other community residents were defamatory and to its conclusion that those statements were not qualifiedly privileged as statements made in the community's common interest. We are unable to consider these assignments of error due to the inadequate record on appeal. *Reed v. Pennwalt Corp.,* 93 Wn.2d 5, 604 P.2d 164 (1979). Although several of Story's allegedly defamatory letters to community residents were entered into evidence at trial and are referred to in the briefs submitted by the parties on appeal, only two of those letters are included in the record. We refuse to make a legal ruling on such a minimal record.

As appellant, Story had the burden of providing an adequate record on appeal. Since Story failed to satisfy this burden, the trial court's decision as it relates to Story's communications to community members must stand. *Sime Constr. Co. v. WPPSS,* 28 Wn. App. 10, 18, 621 P.2d 1299 (1980), *review denied,* 95 Wn.2d 1012 (1981).

ACTUAL DAMAGES

Story next assigns error to the trial court's award of damages. The trial court concluded as a matter of law that under the doctrine of libel per se "the defendant and counterclaimants need not prove actual damages." This conclusion was entered without the court finding actual malice, *i.e.*, that Story knew her statements were false, or had a high degree of awareness of their probable falsity, or entertained serious doubts as to their truth.[5] Based on its conclusion, the court awarded the counterclaimants $3,000 in general damages.

In *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 354, 670 P.2d 240 (1983), Washington adopted the rule that a trier of fact cannot presume damages under the libel per se doctrine unless liability is based upon malice. The *Caruso* court's decision was based upon *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), in which the Supreme Court held that when defamation derives from negligence, not actual malice, a plaintiff may recover only for actual damages.

Recently, the scope of *Gertz* was limited by *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985). In *Dun & Bradstreet*, a plurality held that if the defamatory communications at issue involve matters of purely private concern, a trier of fact may presume damages without finding the declarant acted with actual malice.

The lessened protection *Dun & Bradstreet* affords communications made in private disputes has been recognized by Washington courts, but its holding on this issue has not been expressly adopted. *See Dunlap v. Wayne*, 105 Wn.2d 529, 534–35, 716 P.2d 842 (1986) (convincing clarity standard of proof not required in summary judgment on defamation action involving a nonmedia defendant sued for a

---

[5]As discussed *supra*, the trial court's conclusion that Story acted with reckless disregard of the truth or falsity of her statements fails because of the lack of the necessary finding as to her subjective intent.

statement about private affairs); *Vern Sims Ford, Inc. v. Hagel,* 42 Wn. App. 675, 713 P.2d 736 (court held that because actual malice was shown, proof of actual damages was unnecessary; in dicta, the court also found that presumed damages were allowable under the *Dun & Bradstreet* public/private concern distinction), *review denied,* 105 Wn.2d 1016 (1986).

■ The parties here have only minimally briefed the question of whether the *Caruso* holding as to presumed damages should be modified in the manner permitted by *Dun & Bradstreet.* The issue was not raised at trial. Without adequate briefing, we will not make such a significant change in this state's defamation law. *See generally In re Rosier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986). We therefore hold that in the absence of any finding of actual malice as a basis for presuming damages, the trial court erred in making its damage award. We vacate the damage award and remand this issue to the trial court for a redetermination of damages. If the trial court finds that Story's defamatory communications to community members were made with actual malice, damages may be presumed; otherwise, damages may be assessed for those communications only upon proof of, and entry of findings of fact as to, actual damages sustained. No damages may be assessed for Story's defamatory communications to the Attorney General's office unless the trial court finds that those communications were made with actual malice, in which case damages may be presumed.

## Jury Trial

Story's final contention is that the trial court erred in refusing her demand for a jury trial. Although Story admits her initial complaint against Shelter Co. was primarily for specific performance, she argues that because at the time the case was ready for trial its issues were more legal than equitable, the court abused its discretion in denying her a jury trial.

■ When a matter contains both legal and equitable issues, a trial court has broad discretion as to whether it will allow a jury on none, some or all of the issues. *E.g., Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 617 P.2d 704 (1980). Factors to be considered by a court include:

> (1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) in the exercise of such discretion, great weight should be given to the constitutional right of trial by jury and if the nature of the action is doubtful, a jury trial should be allowed; (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.

*Brown,* 94 Wn.2d at 368 (quoting *Scavenius v. Manchester Port Dist.,* 2 Wn. App. 126, 129–30, 467 P.2d 372 (1970)).

Here, the trial court considered all the issues before it, concluded that the primary relief sought was specific performance, and ruled that a jury would be called in only to determine damages to Story and her coplaintiffs. Given the mixed legal and equitable nature of the case, Story's admission that she, the person seeking equitable relief, was also the one seeking a jury trial, and the trial court's careful consideration of the matter, we cannot say that the trial court's decision was manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).[6]

---

[6]Had Story wanted the court to disregard the equitable issues contained in her complaint in its determination of whether to allow her jury demand, she could have moved for a separate jury trial on respondent's defamation counterclaim under CR 42(b), or demanded a jury trial for only the defamation issues under CR 38(c).

### ATTORNEY'S FEES

Story seeks attorney's fees on appeal based upon her constitutional right to petition for redress. Other than quoting the petition clauses of the Washington and United States Constitutions, she makes no legal argument in support of her request. Instead, she refers this court to arguments contained in an amicus brief filed in another matter "now on appeal at Division I." Story has not provided us copies of that brief. We expressly disapprove of this manner of argument by reference. We further note that a search under the appeal number referred to by Story indicates that the particular matter referenced was denied discretionary review and that no briefs were filed with this court. Assuming Story inadvertently referred to the wrong case, her error underscores the inadvisability of her argument by reference. We refuse Story's request for attorney's fees on the ground she has made no argument or cited pertinent authority in support of her request. *E.g.,* RAP 18.1(b); *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 290, 669 P.2d 451, 39 A.L.R.4th 671 (1983).

### DISPOSITION

We vacate the damage award and remand this matter to the trial court for entry of the requisite findings regarding Story's subjective belief or lack thereof in the truth of her statements, and regarding actual damages. The trial court is also directed to redetermine the damage award if supported by the revised findings. Story's statements to HUD and the Department of Licensing are absolutely privileged and cannot be considered in reassessing damages. The redetermined damages may not exceed the $3,000 previously awarded.

WEBSTER and PEKELIS, JJ., concur.