[No. 31286-7-II.   Division Two.   July 12, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. SHARON L. TRACY, *Appellant*.

*David Schultz*, for appellant.

*Peter S. Banks, Prosecuting Attorney*, and *Barbara L. Corey*, for respondent.

¶1  HOUGHTON, J — After a bench trial on stipulated facts, the trial court convicted Sharon Tracy of one count of manufacturing marijuana and one count of possessing more than 40 grams of marijuana. On appeal, she claims that the trial court erred when it excluded out-of-state authorizations for her medical use of marijuana. We affirm.

## FACTS

¶2  The Department of Child and Family Services referred a domestic matter to Detective Brett Robison. To follow up on the referral, Robison interviewed Aimee Tracy at Stevenson High School on May 7, 2003.[1] After the interview, he drove her home. When they arrived, he detected the strong odor of burning marijuana.

¶3  Robison asked Aimee whether someone in the house smoked marijuana. She told him that Tracy smoked marijuana at least twice a day. Aimee explained that Tracy had a medical marijuana card from California and drove there once a month to purchase marijuana. She stated that Tracy also grew marijuana plants in the attic. Tracy's husband, Edward, later confirmed Aimee's statements.

¶4  Based on this information, police officers obtained a search warrant for the home on May 7. On executing the warrant, the officers discovered 114 grams of marijuana, drug paraphernalia, a small marijuana grow operation, and four juvenile marijuana plants.

---

[1] For clarity, we refer to Sharon Tracy as "Tracy" and Aimee Tracy as "Aimee." Aimee is Tracy's stepdaughter.

¶5 On May 8 and 12, Tracy went to the sheriff's office to speak with Robison. On both occasions, Robison informed Tracy that she was not under arrest, but he read the *Miranda*[2] advisements to her. After indicating that she understood these rights, Tracy explained that she became disabled in 1998.[3] She used Vicodin[4] and Soma[5] to alleviate her pain.

¶6 She told Robison that her mother, who lived in California, was ill with cancer. Frequently, she traveled there to care for her mother. Beginning in September 2002, she spent one to three weeks per month in California.

¶7 Using a California state identification card and her medical records, Tracy obtained a California medical marijuana card in October 2002. Tracy began using medical marijuana to reduce her reliance on Vicodin and Soma. Her niece purchased the marijuana in California. Tracy neither purchased nor sold marijuana in Washington.

¶8 Tracy explained that she used approximately one ounce of marijuana every two or two and one-half weeks. Further, she purchased four marijuana plants in California. Although she did not know how to grow marijuana, she "'built up my own makeshift little growing place in the attic.'" Supplemental (Suppl.) Clerk's Papers (CP) at 3.

¶9 Robison asked why Tracy had not obtained a Washington medical marijuana card. She stated that she had tried but had trouble finding a doctor that "'believed in prescribing medical marijuana.'" Suppl. CP at 3. Finally, Tracy acknowledged that "'from October to the present I

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (holding that custodial statements are inadmissible unless officers warn the individual that (1) he has the right to remain silent, (2) any statement may be used against him, (3) he has the right to an attorney, and (4) he may waive those rights).

[3] Although not reflected in the police report, Tracy's medical records indicate that she has a congenital hip deformity. At sentencing, she stated that her colon ruptured in 1999, resulting in eight surgeries.

[4] Vicodin is a narcotic similar to codeine. PHYSICIANS' DESK REFERENCE 525 (58th ed. 2004).

[5] Soma is a muscle relaxant. PHYSICIANS' DESK REFERENCE, at 1919.

was doing something illegal.' " Suppl. CP at 3. Robison did not arrest Tracy after these interviews.

¶10 On July 1, 2003, Tracy obtained an authorization to possess medical marijuana from an Oregon doctor, David Dodge. The title of this authorization is "Documentation of Medical Authorization to Possess Marijuana for Medical Purposes in Washington State." CP at 28.

¶11 The State charged Tracy with one count of manufacturing marijuana (count I) and one count of possessing more than 40 grams of marijuana (count II) on September 22, 2003.

¶12 The State moved in limine to exclude the California medical marijuana card.[6] In ruling, the trial court entered written findings and conclusions. In pertinent part, the court found as follows:

### FINDINGS OF FACT

1. Sharon L. Tracy, on May 7, 2003, did possess a medical marijuana card issued in California, which was contemporaneously taken into police custody.

2. Sharon L. Tracy did not possess "valid documentation" as defined in RCW 69.51A.010(5)(a) on May 7, 2003.

3. Sharon L. Tracy did obtain "valid documentation" as defined in RCW 69.51A.010(5)(a), which authorized her to use medical marijuana on July 1, 2003. Sharon L. Tracy possessed a valid WA state driver's license on all relevant dates.

CP at 35-36. The court excluded the California medical marijuana card as irrelevant and unduly prejudicial. Further, it excluded any evidence that she obtained valid documentation after May 7, 2003, again on relevance and prejudice grounds.

---

[6] It did not move to exclude the authorization issued by Dr. Dodge in its motion or at oral argument.

¶13 Tracy agreed to a bench trial on stipulated facts on January 12, 2004.[7] The trial court found her guilty of both counts. It sentenced her to three months on count I and 45 days on count II, terms within her standard range.

¶14 Tracy appeals.[8]

## ANALYSIS

### STATUTORY OVERVIEW

¶15 Washington voters passed Initiative Measure No. 692 in November 1998. RCW 69.51A.005. The statement of purpose explains the voters' rationale:

> The people of Washington state find that some patients with terminal or debilitating illnesses, under their physician's care, may benefit from the medical use of marijuana. . . .
>
> The people find that humanitarian compassion necessitates that the decision to authorize the medical use of marijuana by patients with terminal or debilitating illnesses is a personal, individual decision, based upon their physician's professional medical judgment and discretion.

RCW 69.51A.005.

¶16 Codified at chapter 69.51A RCW, the Washington State Medical Use of Marijuana Act (the Act) ensures that "qualifying patients with terminal or debilitating illnesses who . . . would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law[9] for their possession and limited use of marijuana." RCW 69.51A.005.

---

[7] The stipulated facts included those found in the police reports, in the written findings and conclusions dated December 22, 2003, and any photographs and exhibits as admitted. Further, Tracy stipulated that she possessed greater than 40 grams of marijuana but denied possessing more than 41 grams. When agreeing to a stipulated facts trial, Tracy's counsel stated that she retained the right to a jury trial should the matter be retried.

[8] The Supreme Court denied her petition to transfer.

[9] Persons who "manufacture, distribute, dispense, or possess any controlled substance," including marijuana, may be subject to federal prosecution. *See Gonzales v. Raich*, ___ U.S. ___, 125 S. Ct. 2195, 2203, 162 L. Ed. 2d 1 (2005) (holding that the Controlled Substances Act, 21 U.S.C. §§ 801-971, constitutes a valid exercise of congressional power under the commerce clause).

¶17 To meet the definition of a "qualifying patient," the defendant must prove that he

(a) Is a patient of a physician licensed under chapter 18.71 or 18.57 RCW;

(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;

(c) Is a resident of the state of Washington at the time of such diagnosis;

(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and

(e) Has been advised by that physician that they may benefit from the medical use of marijuana.

RCW 69.51A.010(3).

¶18 "Qualifying patients" may then assert an affirmative defense to state prosecution, provided they meet the following criteria:

(2) The qualifying patient . . . shall:

(a) Meet all criteria for status as a qualifying patient;

(b) Possess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply; and

(c) Present his or her valid documentation to any law enforcement official who questions the patient regarding his or her medical use of marijuana.

RCW 69.51A.040.

EXCLUSION OF THE CALIFORNIA DOCUMENTATION

¶19 Tracy contends that the trial court erred when it excluded the California medical marijuana card, asserting several grounds.

¶20 As a preliminary matter, Tracy did not include the California authorization in the appellate record. The appellant bears the burden of providing an adequate record for our review. *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988). If the appellant fails to meet this

burden, the trial court's decision stands. *Story*, 52 Wn. App. at 345. Because Tracy failed to provide the California documentation, we affirm its exclusion below.[10]

¶21 We examine, however, whether physicians licensed in other states meet the requirements of RCW 69.51A-.010(3)(a).[11]

¶22 As a question of law, we review statutory interpretation de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). When interpreting a statute, our duty is to discern and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If a statute's meaning is plain on its face, we give effect to that plain meaning. *McGinnis v. State*, 152 Wn.2d 639, 645, 99 P.3d 1240 (2004). We derive plain meaning not only from the statute at hand, but also from related statutes disclosing legislative intent about the provision in question. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

¶23 An ambiguous statute is one fairly susceptible to different, reasonable interpretations. *McGinnis*, 152 Wn.2d at 645. A statute is not ambiguous simply because different interpretations are conceivable. *Fraternal Order*

---

[10] Tracy also argues that Washington must recognize her California medical marijuana card under the full faith and credit clause of the United States Constitution. Because she did not provide the California authorization on appeal, she has not preserved this issue for review. *Story*, 52 Wn. App. at 345. Additionally, Tracy contends that the trial court infringed on her constitutional right to travel. But Tracy cites no authority to support her contention. *See* RAP 10.3(a)(5) (stating that appellant must set forth argument along with citation to legal authority). Accordingly, we do not consider this argument.

[11] We address this issue because only three published cases interpret the Act, and none examine whether a doctor validly licensed in another state may prescribe medical marijuana in Washington. *See State v. Butler*, 126 Wn. App. 741, 749-51, 109 P.3d 493, 497 (2005) (Division Two case holding, inter alia, that the Act's affirmative defense superseded the common law medical necessity defense); *State v. Phelps*, 118 Wn. App. 740, 745, 77 P.3d 678 (2003) (Division Two case holding that a patient must designate his primary caregiver "before the possession or attempted possession charge is made"); *State v. Shepherd*, 110 Wn. App. 544, 548, 552, 41 P.3d 1235 (Division Three case determining that (1) a physician's statement that a qualifying patient "*may* benefit from the medical use of marijuana" is insufficient and (2) the defendant must establish his particular need when proving the amount necessary for a 60-day supply), *review denied*, 147 Wn.2d 1017 (2002).

*of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239-40, 59 P.3d 655 (2002), *cert. denied*, 538 U.S. 1057 (2003). We construe statutes to avoid strained or absurd results. *Strain v. W. Travel, Inc.*, 117 Wn. App. 251, 254, 70 P.3d 158 (2003), *review denied*, 150 Wn.2d 1029 (2004). Under the rule of lenity, we interpret ambiguous criminal statutes in favor of the accused. *In re Pers. Restraint of Stenson*, 153 Wn.2d 137, 149 n.7, 102 P.3d 151 (2004).

¶24 RCW 69.51A.010(3)(a) defines a "qualifying patient," in part, as "a patient of a physician licensed under chapter 18.71 or 18.57 RCW."[12]

¶25 Chapter 18.71 RCW does not define the term "licensed." Thus, we turn to a standard English dictionary to ascertain its meaning. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 77, 882 P.2d 703, 891 P.2d 718 (1994). When used as a verb, the word "license" means either "to grant or issue a license to (someone) [usually] after special qualifications have been met" or "to accord permission or consent to : ALLOW." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1304 (1976).

¶26 Chapter 18.71 RCW details Washington's licensing procedures for physicians. RCW 18.71.021 requires that individuals obtain a valid license before practicing medicine within the state. Applicants for a license must (1) pay a fee, RCW 18.71.040; (2) meet eligibility requirements, RCW 18.71.050; (3) successfully complete an examination administered by the Washington state medical quality assurance commission, RCW 18.71.070;[13] and (4) periodically renew the license, RCW 18.71.080.

---

[12] Chapter 18.57 RCW addresses the practice of osteopathy. Because nothing indicates that either the California or Oregon doctors practiced osteopathy and because this chapter contains provisions similar to chapter 18.71 RCW, we confine our analysis to chapter 18.71 RCW.

[13] Chapter 18.71 RCW provides some exceptions to the examination requirement. *See* RCW 18.71.090 (reciprocity statute); RCW 18.71.095 (limited license provision).

¶27 But RCW 18.71.030 provides exemptions to the licensing requirements, stating in relevant part:

Nor shall anything in this chapter be construed to prohibit:

. . . .

(6) The practice of medicine by any practitioner licensed by another state or territory in which he or she resides, provided that such practitioner shall not open an office or appoint a place of meeting patients or receiving calls within this state.

¶28 Given the language of chapter 18.71 RCW, there is only one reasonable interpretation of the term "licensed." Our licensing scheme differentiates between physicians who are *licensed* in the state and those who are licensed in another state but who are *permitted to practice medicine* in Washington. As used in chapter 18.71 RCW, then, the term "licensed" is not synonymous with "permitted" or "allowed." Rather, physicians "licensed" under chapter 18.71 RCW met the qualifications of our regulatory guidelines and received a license from the state of Washington.

¶29 Accordingly, we hold that only those physicians validly licensed in Washington may prescribe medical marijuana to persons in this state.[14]

RIGHT TO JURY TRIAL AND PRESENTATION OF DEFENSE

¶30 Finally, Tracy claims that when the trial court excluded the out-of-state authorizations, it deprived her of the right to a jury trial and the opportunity to present a meaningful defense.

¶31 Under the federal and Washington constitutions, an accused has a right to compulsory process, such that she may compel the attendance of witnesses. *See State v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). This right to compulsory process is synonymous with the right to

---

[14] Tracy provided the Oregon authorization in the appellate record. But nothing indicates that Dr. Dodge holds a license to practice medicine in Washington. Thus, the trial court properly excluded the Oregon authorization. Because the Oregon authorization is inadmissible, we do not address Tracy's interpretation of the affirmative defense statute.

present a defense. *State v. Maupin*, 128 Wn.2d 918, 924, 913 P.2d 808 (1996).

¶32 But the right to present a defense is not absolute. *Maupin*, 128 Wn.2d at 924-25. Rather, a criminal defendant has a constitutional right to present relevant evidence that is not otherwise inadmissible. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992), *review denied*, 120 Wn.2d 1022, *cert. denied*, 508 U.S. 953 (1993). We will not reverse the trial court's admission or exclusion of evidence absent an abuse of discretion. *Rehak*, 67 Wn. App. at 162. A court abuses its discretion when it bases its decision on untenable or unreasonable grounds. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 691, 101 P.3d 1 (2004).

¶33 Here, we have already determined that the trial court properly excluded Tracy's out-of-state authorizations. As such, her argument fails.

¶34 Affirmed.

MORGAN, A.C.J., and ARMSTRONG, J., concur.

Review granted at 156 Wn.2d 1030 (2006).