147 P.3d 559 (2006)
STATE of Washington, Respondent,
v.
Sharon Lee TRACY, Petitioner.
No. 77534-6.
Supreme Court of Washington, En Banc.
Argued June 8, 2006.
Decided November 22, 2006.
*560 David Schultz, Camas, for Petitioner.
Peter S. Banks, Skamania County Prosecutor's Office, Stevenson, for Respondent.
Suzanne Lee Elliott, Seattle, for Amicus Curiae Wash. Ass'n of Criminal Defense Lawyers.
Pamela Beth Loginsky, Washington Assoc. of Prosecuting Atty., Olympia, Seth Aaron Fine, Snohomish Co. Prosecutor's Office, Everett, for Amicus Curiae Wash. Ass'n of Pros. Attorneys.
CHAMBERS, J.
¶ 1 In 1998, Washington voters passed Initiative 692 (I-692). I-692 created a compassionate use defense against prosecution for marijuana related crimes, but only for "qualifying patients." Ch. 69.51A RCW. Sharon Lee Tracy challenges her convictions for manufacturing and possessing marijuana on the theory that she was improperly prevented from presenting this defense. We conclude that she did not establish she was a "qualifying patient" entitled to present a compassionate use defense under RCW 69.51A.010(3). We also conclude that the absence of the California medical marijuana card from the record prevents us from reaching her full faith and credit arguments. We affirm the Court of Appeals.

FACTS
¶ 2 After interviewing Tracy's stepdaughter Aimee Tracy, while investigating a domestic violence complaint, Detective Brett Robison accompanied Aimee to the Tracy home to collect some clothes, apparently to facilitate Aimee staying elsewhere. While at the Tracy home, Detective Robison smelled marijuana. Aimee disclosed that her stepmother used it regularly.
¶ 3 Detective Robison returned with a search warrant. About 40 grams of marijuana, four marijuana plants, and a California medical marijuana card were found and confiscated. Tracy admitted the marijuana was hers and stated that no one else in the house used it. About two months after this, Tracy saw an Oregon doctor who agreed with her California physician that she would benefit from the use of medical marijuana.
¶ 4 After being charged with possession and manufacture of marijuana, Tracy informed the prosecution that she intended to present a compassionate use defense based on both the California medical marijuana card she had in her possession on the day her home was searched and on the subsequent authorization she received from the Oregon doctor.[1] A hearing was conducted to determine whether she possessed "valid documentation" under RCW 69.51A.010(5)(a), providing an evidentiary basis for such a defense. There is no dispute that Tracy possessed a valid California medical marijuana card on the date of her arrest, May 7, 2003. It is also undisputed that no physician who was formally licensed to practice medicine in Washington State had authorized Tracy to use marijuana.
¶ 5 The case proceeded to a bench trial on stipulated facts. The trial court concluded *561 that the evidence Tracy presented did not meet the statutory prerequisites for asserting a compassionate use defense, effectively preventing her from arguing her theory of the case. Subsequently, Tracy was convicted of possession and manufacture of marijuana. The Court of Appeals affirmed. State v. Tracy, 128 Wash.App. 388, 115 P.3d 381 (2005). We accepted review, State v. Tracy, noted at 156 Wash.2d 1030, 133 P.3d 474 (2006).

ANALYSIS
¶ 6 Only questions of law are before us. Our review is de novo. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002).[2]

1. QUALIFYING PATIENTS
¶ 7 We surmise that Tracy's life has not been an easy one. The Skamania detective's visit to her home was part of a child welfare investigation prompted when Tracy's stepdaughter reported that her father had become enraged and smashed a chair. Tracy herself was staying at a domestic violence shelter at the time of the detective's initial visit with Aimee.
¶ 8 Tracy has also struggled with chronic pain since the 1970s. The record suggests that her medical conditions include a hip deformity, migraine headaches, a series of eight corrective surgeries following a ruptured colon and bowel conditions. As a result of these persistent health problems, Tracy has been disabled since 1998. Over the years, Tracy has been prescribed a number of different drugs including Vicodin and Soma. While visiting family in California, Tracy obtained a California doctor's authorization to possess marijuana for medical purposes.
¶ 9 Tracy may have been exactly the kind of patient the voters of this State had in mind when they enacted the medical marijuana initiative, I-692, in 1999. See ch. 69.51A RCW, the "State Medical Use of Marijuana Act." Under the act:
The people find that humanitarian compassion necessitates that the decision to authorize the medical use of marijuana by patients with terminal or debilitating illnesses is a personal, individual decision, based upon their physician's professional medical judgment and discretion.
RCW 69.51A.005.
¶ 10 But only qualifying patients are entitled to use the defense. This limits it to:

Qualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana;
Id. (emphasis added). The act defines "qualifying patient" as one who:
(a) Is a patient of a physician licensed under chapter 18.71 or 18.57 RCW;

(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;
(c) Is a resident of the state of Washington at the time of such diagnosis;
(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and
(e) Has been advised by that physician that they may benefit from the medical use of marijuana.
RCW 69.51A.010(3) (emphasis added). It appears that the trial judge prevented Tracy from bringing the defense on the ground that she was not a patient of a "qualified physician" because her California physician was not licensed under chapter 18.71 or 18.57 *562 RCW.[3] It also appears that the trial judge excluded the authorization received from the Oregon doctor on the ground that it was not received until after the fact.[4]
¶ 11 A defendant asserting an affirmative defense, such as the compassionate use defense, bears the burden of offering sufficient evidence to support that defense. State v. Janes, 121 Wash.2d 220, 236-37, 850 P.2d 495 (1993). Tracy bore the burden of producing at least some evidence that she was a qualified patient of a qualified physician before she could assert the compassionate use defense. Cf. Janes, 121 Wash.2d at 237, 850 P.2d 495; State v. McCullum, 98 Wash.2d 484, 488, 656 P.2d 1064 (1983).
¶ 12 We turn to the meaning of "qualified physician" under the statute. Chapter 18.71 RCW establishes the statutory system which regulates physicians. Relevantly, it does two things. It licenses physicians to practice medicine in Washington, and it authorizes licensed physicians from other jurisdictions to practice medicine in Washington so long as they do not open an office, establish a place to meet with patients, or receive calls within the state. RCW 18.71.021, .030(6).
¶ 13 Becoming a licensed doctor in this state is a formal affair. Requirements include successful completion of an examination administered by the Washington Medical Quality Assurance Commission, or passing an exam in another state and completing specific procedural requirements. RCW 18.71.070, .090, .095. Tracy's California and Oregon doctors are not formally "licensed" in Washington under chapter 18.71 RCW. The State contends that our inquiry can end here. Since Tracy was not a patient of a qualifying physician, they argue, she is not entitled to present the defense.
¶ 14 Tracy argues that the courts below were not sufficiently expansive in interpreting the voters' intent. She reasons that since out-of-state physicians have licenses recognized under chapter 18.71 RCW, we should treat the physicians as being licensed under chapter 18.71 RCW. Cf. RCW 18.71.021 ("No person may practice . . . medicine without first having a valid license to do so.") (emphasis added) (recognizing validity of licenses from other states); RCW 18.71.030(6) ("Nothing in this chapter shall be construed . . . to prohibit [t]he practice of medicine by any practitioner licensed by another state. . . .") (emphasis added) (explicitly recognizing that other states can license).
¶ 15 But the exception relied upon by Tracy does not include all out-of-state physicians for every purpose; it merely permits out-of-state physicians temporarily within the state, but without an office or similar professional connections, to practice their calling while in Washington. RCW 18.71.030(6). The initiative could have, but did not, define a qualifying doctor as one with a valid license from any state. Instead, it defined qualifying doctors as those licensed under Washington law. This was a deliberate choice, and Tracy gives us no statutory reason to find that the language does not mean what it appears to say.
¶ 16 Only qualifying patients are entitled to the defense under the act. RCW 69.51A.005. Among other things, qualifying patients must be patients of qualifying doctors. RCW 69.51A.010(3). Since Tracy was not a patient of a qualifying doctor, she is not entitled to assert the defense.[5]

2. RECORD
¶ 17 We turn now to whether Tracy has provided us with an adequate record to address her argument that the full faith and credit clause of the United States Constitution *563 requires that she be allowed to present her compassionate use defense. She did not include a copy of her California medical marijuana card. While the omission is not explained, it appears likely that the card was never returned to her after the police seized it at the time of the original search. Since it was not admitted into evidence, even under some sort of reservation, it was not made part of the record at trial.
¶ 18 While we are not without sympathy, it is Tracy's responsibility as a petitioner to provide an adequate record for appellate review of her claims. Story v. Shelter Bay Co., 52 Wash.App. 334, 345, 760 P.2d 368 (1988). The appeals court below declined to hear her full faith and credit claim on the ground that the California medical marijuana card was not included in the record. In addition to not knowing what the card said or by whom it was signed or what limitations it may have, we note that a "qualifying patient" may be broader under California law.
¶ 19 We decline to reach the full faith and credit claim based upon the record before us.[6]

CONCLUSION
¶ 20 In I-692, Washington voters created a compassionate use defense against marijuana charges. The voters also limited that defense to qualifying patients. Among other things, a qualifying patient must be a patient of a qualifying doctor. RCW 69.51A.010(3). Tracy's evidence did not establish she was, and therefore the trial court did not err by excluding it. We find the record inadequate to reach her full faith and credit claim.
¶ 21 We affirm Sharon Lee Tracy's convictions.
Chief Justice GERRY L. ALEXANDER, Justices CHARLES W. JOHNSON, BOBBE J. BRIDGE, SUSAN OWENS and MARY E. FAIRHURST, concur.
J.M. JOHNSON, J. (dissenting).
¶ 22 The Official Ballot Title submitted to the people for Initiative 692 (I-692) in 1998 asked: "Shall the medical use of marijuana for certain terminal or debilitating conditions be permitted, and physicians authorized to advise patients about medical use of marijuana?" State of Washington Voters Pamphlet, General Election 8 (Nov. 3, 1998). By overwhelming vote, the people of Washington enacted the law. Because today's majority decision deprives Sharon Tracy of the protections afforded by the people through this legislation, and allows her to be convicted of a crime for exercising that privilege, I dissent.
¶ 23 Article II, section 1 of the Washington Constitution provides the people the power to adopt such laws:
The legislative authority of the state of Washington shall be vested in the legislature . . . but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature. . . .
. . . The first power reserved by the people is the initiative. . . .
CONST. art. II, § 1.
¶ 24 Washington Constitution article II, section 1 was amended to provide that power early in the 20th century when demand grew for direct participation in lawmaking. In 1912, the people ratified the seventh amendment to article II, section 1, which "reserved" to the people the powers of initiative and referendum.[1]Fritz v. Gorton, 83 Wash.2d 275, 281, 517 P.2d 911 (1974). Several *564 subsequent amendments clarified the mechanisms by which these powers were exercised. Most important for this case is the thirty-sixth amendment, a constitutional mandate for a voters pamphlet, which the secretary of state must distribute to each residence. Each pamphlet must include the full initiative and a section describing the legal effect of the proposed measure, written by the state attorney general, as well as arguments for and against by proponents and opponents. As a consequence, we have informed voters.
¶ 25 This court recently reiterated our starting point for considering initiatives when dismissing a pre-election challenge to one proposed initiative, "the right of initiative is nearly as old as our constitution itself, deeply ingrained in our state's history, and widely revered as a powerful check and balance on the other branches of government. Accordingly, this potent vestige of our progressive era past must be vigilantly protected by our courts." Coppernoll v. Reed, 155 Wash.2d 290, 296-97, 119 P.3d 318 (2005) (citing In re Estate of Thompson, 103 Wash.2d 292, 294-95, 692 P.2d 807 (1984)).
¶ 26 Pursuant to their initiative power, the people of Washington passed I-692, approving the use of marijuana by qualifying patients for enumerated medical purposes. State v. Butler, 126 Wash.App. 741, 748, 109 P.3d 493 (2005). The initiative has since been codified at chapter 69.51A RCW. The official ballot title communicated state permission for medical marijuana, with doctor advice. The constitutionally-required voters pamphlet also included I-692's statement of purpose: to allow persons suffering from specified medical conditions to use marijuana as part of their physician-directed treatment regimens without running the risk of prosecution for a drug crime. The voters pamphlet contained the following statement of purpose and intent:
The People of Washington state find that some patients with terminal or debilitating illnesses, under their physician's care, may benefit from the medical use of marijuana. . . .
The People find that humanitarian compassion necessitates that the decision to authorize the medical use of marijuana by patients with terminal or debilitating illnesses is a personal, individual decision, based upon their physician's professional medical judgment and discretion.
Therefore, The people of the state of Washington intend that:
Qualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana. . . .
Voters Pamphlet, supra, at 17 (codified at RCW 69.51A.005). Note that nowhere in this statement of policy was "physician" defined or restricted to those licensed by this state.
¶ 27 I-692 was passed by a margin of 59 percent to 41 percent of the vote.[2] The present case turns on whether, in enacting I-692, the people of Washington provided protection from prosecution for Ms. Tracy and others in her circumstance. It is hard to conclude to the contrary, as does the majority.

FACTUAL BACKGROUND
¶ 28 In 2002, while living part time in California to care for her terminally ill mother, Ms. Tracy visited a California physician regarding her own health. State v. Tracy, 128 Wash.App. 388, 391, 115 P.3d 381 (2005). Ms. Tracy sought treatment for chronic pain, which she has suffered for decades as a result of a hip deformity, migraine headaches, and a series of corrective surgeries. Majority at 561. To relieve her pain and lessen her dependence on addictive prescription painkillers, Ms. Tracy's California-licensed physician provided written authorization to possess and use marijuana in accordance with that state's comparable law. CAL. HEALTH & SAFETY CODE §§ 11362.5, *565 11362.7 (Derring 2006); Tracy, 128 Wash. App. at 391, 115 P.3d 381.[3]
¶ 29 After receiving this doctor's authorization, Ms. Tracy purchased and used marijuana for medical purposes during the time she spent in California with her mother. Tracy, 128 Wash.App. at 391, 115 P.3d 381. She also continued to use this marijuana when she returned to her home in Skamania County, Washington. Ms. Tracy never purchased or sold marijuana in Washington. Id. However, after returning to Washington on a more permanent basis, Ms. Tracy did keep four marijuana plants at her home to grow marijuana for personal use. Id.
¶ 30 In March 2003, while visiting Ms. Tracy's home for an unrelated purpose, Detective Brett Robinson became aware of Ms. Tracy's marijuana use. Id. at 390-91, 115 P.3d 381. When questioned, Ms. Tracy readily admitted to possessing and using marijuana for medical purposes. Id. She also provided the police with her California medical marijuana card. Majority at 560. Ms. Tracy explained that she had not yet obtained a Washington medical marijuana card because she had not found a Washington doctor who "`believed in prescribing medical marijuana.'" Tracy, 128 Wash.App. at 391, 115 P.3d 381 (quoting clerk's papers).
¶ 31 Ultimately, Ms. Tracy was charged with one count of manufacturing marijuana and one count of possessing more than 40 grams of marijuana. Id. at 390, 115 P.3d 381. The trial court granted the State's motion in limine to bar Ms. Tracy from raising a medical marijuana defense under I-692, over Ms. Tracy's objection. Id. at 392, 115 P.3d 381. Ms. Tracy was then convicted on both counts, following a bench trial on stipulated facts. Id. at 393, 115 P.3d 381. Division Two of the Court of Appeals affirmed this conviction, as does a majority of this court.
¶ 32 The majority, like the Court of Appeals and the trial court, concludes that Ms. Tracy is not entitled to raise an affirmative defense pursuant to I-692 because she is not a "`qualifying patient.'" Majority at 560. In particular, the majority finds that Ms. Tracy does not come within the definition of qualifying patient because she has not been treated by "a physician licensed under chapter 18.71 or 18.57[4] RCW." RCW 69.51A.010(3)(a) (emphasis added). Majority at 562-63; 128 Wash.App. at 396-97, 115 P.3d 381.
¶ 33 The majority adopts a strict reading of the phrase "licensed under chapter 18.71." Namely, the majority concludes that a patient only qualifies if treated by a physician who possesses a Washington state medical license. Majority at 562. In adopting this definition, the court rejects Ms. Tracy's argument that the term "licensed under chapter 18.71" should be interpreted broadly, and as understood by the voters, to include doctors with Washington state licenses and also physicians validly licensed to practice medicine by other states and thus exempted from the licensing requirements of chapter 18.71 RCW. See RCW 18.71.030(6).[5]
¶ 34 Essentially, Ms. Tracy proposes that "licensed" be interpreted by this court as the voters understood it, and in accordance with its commonly accepted definition, to mean having permission or authority to act.[6] Under her reading of the statute, Ms. Tracy's physician in California would be considered "licensed," assuming he acted in compliance with RCW 18.71.030(6).
¶ 35 Ms. Tracy correctly points out that initiatives susceptible to reasonable alternative *566 interpretations, such as I-692, are to be construed in order to effectuate the intent of the electorate. State ex rel. Public Disclosure Comm'n v. Wash. Educ. Ass'n, 156 Wash.2d 543, 554, 130 P.3d 352 (2006). Moreover, remedial statutes are to be construed liberally to further their remedial purposes. State v. Grant, 89 Wash.2d 678, 685, 575 P.2d 210 (1978).
¶ 36 Because initiatives are not accompanied by the usual sources of legislative history, such as committee files and bill reports, courts look to the constitutionally-required voters pamphlet to determine the meaning and purposes of the measures. Wash. Educ. Ass'n, 156 Wash.2d at 554, 130 P.3d 352; Wash. State Dep't of Revenue v. Hoppe, 82 Wash.2d 549, 552, 512 P.2d 1094 (1973). As noted above, the ballot title of I-692 clearly covers Ms. Tracy and others like her. The purpose language contained in the voters pamphlet for I-692 (see supra) also includes broad statements in favor of providing access to medical marijuana for patients suffering from certain terminal or debilitating illnesses.
¶ 37 Finally, the description of the legal effect of I-692, written by the attorney general for the voters pamphlet, describes qualifying patients as those treated by "physicians" or "licensed physicians"  it does not restrict this legislation to physicians with Washington medical licenses. Accordingly, the phrase "licensed under chapter 18.71" should be given a reasonable interpretation, which protects all patients whom the people of Washington intended to protect when they adopted the law.
¶ 38 Today, as when I-692 was enacted, Washington law permits out-of-state physicians, who are licensed in their home states, to treat patients who are residents of the state of Washington without obtaining a Washington medical license. See RCW 18.71.030(6); see also RCW 69.41.030 (recognizing legend drug prescriptions from physicians "licensed . . . in any state of the United States"). The treatment of patients includes the administration of drugs. RCW 18.71.011(2). Had Ms. Tracy's California physician given her a prescription for Vicodin,[7] one of the addictive pain medications which she was trying to avoid with the help of small amounts of marijuana, that prescription would be legal, and she could have filled the prescription at any Washington pharmacy. See RCW 69.50.101(w)(3); RCW 69.50.308(b).
¶ 39 The majority offers no persuasive rationale for holding that the people of Washington understood, let alone intended, that an otherwise qualified patient would be excluded from protection by I-692 simply because the patient's treating physician was licensed in California or Oregon rather than Washington. Thus, it contradicts established canons of statutory construction to interpret I-692 in the manner advocated by the majority. The majority also violates special canons for initiative interpretation. "In determining intent from the language of the statute, the court focuses on the language as the average informed voter voting on the initiative would read it." Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 205, 11 P.3d 762 (2000).
¶ 40 The majority may believe that permitting out-of-state physicians to prescribe marijuana to otherwise qualified patients under Washington law is an unwise policy (or that medical marijuana is a bad policy). However, "`[i]t is not the prerogative nor the function of the judiciary to substitute what they may deem to be their better judgment for that of the electorate in enacting initiatives . . . unless the errors in judgment clearly contravene state or federal constitutional provisions.'" Amalgamated Transit, 142 Wash.2d at 206, 11 P.3d 762 (alteration in original) (quoting Fritz, 83 Wash.2d at 287, 517 P.2d 911). No such constitutional violation is threatened by Ms. Tracy's common sense interpretation of I-692.
¶ 41 The majority concedes that "Tracy may have been exactly the kind of patient the voters of this State had in mind when they enacted the medical marijuana initiative, I-692, in 1999." Majority at 561-62. Because I-692 may be reasonably interpreted to effectuate *567 the people's intent to protect people like Ms. Tracy, and because I believe it is this court's duty to respect and protect the people's constitutional right to make such decisions through the initiative process, I respectfully dissent.
Justices BARBARA A. MADSEN and RICHARD B. SANDERS, concur.
NOTES
[1] We note that the trial court entered a finding that the authorization received by the Oregon doctor, David L. Dodge, met Washington's requirements. His reasoning is not on the record. See Clerk's Papers at 36. According to the Department of Health website, no David L. Dodge is licensed to practice medicine in Washington State. See Wash. State Dep't of Health, Med. Quality Assurance Comm'n, https://www.fortress. wa.gov/doh/hpqa1/Application/Credential Search/profile.as p (search for David Dodge) (last visited November 16, 2006). Tracy does not argue that her California doctor was formally licensed in Washington.
[2] The State has made a motion to strike exhibits and arguments from an amici brief filed by the Washington Association of Criminal Defense Attorneys and American Civil Liberties Union. The materials in question relate to amici's argument that prosecutors and courts have interpreted the State Medical Use of Marijuana Act, chapter 69.51A, so over technically as to effectively deny those suffering from serious illnesses (such as AIDS (acquired immune deficiency syndrome), cancer, and chronic pain) the intended benefits of the act. Amici may be correct that the benefits of the act have not been as great as people intended, but we only address the question before us, and many of amici's arguments are best made to the legislature. Since we do not reach the arguments presented, the motion is denied as moot.
[3] Chapter 18.57 RCW concerns osteopaths and is not before us.
[4] We note that this likely accords with the statutory scheme. A defendant seeking to present compassionate use as an affirmative defense must present valid documentation to any officer who questions the presence of marijuana. RCW 69.51A.040(2)(c). However, we need not reach whether the trial judge correctly excluded the Oregon doctor's authorization on review on those grounds, given our disposition of the central issue in the case.
[5] We thank our dissenting colleague for his review of the history and purpose of initiatives. He is certainly correct that the stirring policy statement for Initiative I-692 did not tell the reader which physicians could authorize their patients to use marijuana. But the initiative did. RCW 69.51A.010(3)(a).
[6] In addition to an inadequate record, Tracy fails to develop the law relevant to her full faith and credit claim. Although amici attempt to do so, this issue is best left for another time. This issue may be best raised by a true visitor. A true visitor would not be either a former resident of another state who is now a Washington resident nor Washington resident who has obtained a foreign medical marijuana card, but the resident of another state who is temporarily traveling within Washington and relying on a medical marijuana authorization from her state of residence. We note that the Supreme Court of Hawaii recently touched upon this very issue in State v. Adler, 108 Hawai`i 169, 118 P.3d 652 (2005) and found it unnecessary to analyze the full faith and credit issue.
[1] The same year, voters ratified the eighth amendment (approved Nov. 1912) to Washington Constitution article I, section 33, allowing recall of all elective public officers, except judges.
[2] Wash. Secretary of State, Previous Election, https://www.secstate.wa.gov/elections/previous_ elections.aspx (follow "Election Results Search" hyperlink; then search "Ballot Measures" and "1998 General").
[3] I-692 applies to persons suffering from a variety of "debilitating illnesses" including "some forms of intractable pain." RCW 69.51A.005.
[4] Chapter 18.57 RCW covers osteopathic physicians and surgeons and is not relevant for purposes of this case.
[5] RCW 18.71.030 provides, in relevant part:

Nothing in this chapter shall be construed to apply to or interfere in any way with the practice of religion or any kind of treatment by prayer; nor shall anything in this chapter be construed to prohibit:
. . . .
(6) The practice of medicine by any practitioner licensed by another state or territory in which he or she resides, provided that such practitioner shall not open an office or appoint a place of meeting patients or receiving calls within this state. . . .
[6] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1304 (2002)
[7] Tracy, 128 Wash.App. at 391 n. 4, 115 P.3d 381 ("Vicodin is a narcotic similar to codeine." (citing PHYSICIANS' DESK REFERENCE 525 (58th ed.2004))).