246 P.3d 589 (2011)
STATE of Washington, Respondent,
v.
Kimberly Ann PHILLIPS, Appellant.
Nos. 38646-1-II, 39253-4-II.
Court of Appeals of Washington, Division 2.
February 8, 2011.
*590 Sheri Lynn Arnold, Attorney at Law, Tacoma, WA, for Appellant.
Kimberley Ann Demarco, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
WORSWICK, A.C.J.
¶ 1 Kimberly Phillips was convicted of eight counts of first degree theft. Phillips appeals, arguing (1) the trial court's ruling on her prior convictions was an abuse of discretion and denied her the right to present a defense, (2) a photograph of one of the elderly victims was irrelevant and prejudicial, (3) one of the witnesses who testified against her was incompetent, (4) insufficient evidence supports her convictions and exceptional sentences, (5) the trial court erred by not giving her proposed instructions, and (6) the trial court erred in arriving at the restitution amount. In a statement of additional grounds (SAG),[1] she raises six additional issues. Finding no error, we affirm.

FACTS
¶ 2 A jury convicted Phillips of eight counts of first degree theft against five elderly victims, all occurring between March and September 2007. These victims were between 79 and 93 years old at the time of the trial.

I. Marie Adams
¶ 3 The first victim, Marie Adams, was 84 years old at the time of trial in October 2008. For more than 20 years, she had been unable to walk and had been on oxygen. Adams, who lived alone, put an ad in the paper seeking a part-time caretaker. Phillips responded to the ad. When Phillips met Adams to discuss the caretaker position, Phillips told Adams that Phillips needed money before an escrow company would release a $67,000 check being held for her. She promised Adams a bonus if Adams lent her the money she needed. Adams agreed to go with Phillips to an escrow office, but she wanted to verify the escrow before lending Phillips the money.
¶ 4 Phillips drove Adams's car because Adams no longer had a driver's license and Adams's car could accommodate her mobility scooter. Phillips took Adams to a Washington Mutual Bank to withdraw $5,000, but Adams insisted on holding the money until she could verify the escrow. Phillips then drove Adams to a building that supposedly housed the escrow company, but she told Adams that she could not come inside because it was not wheelchair accessible. Adams refused to hand over the money and asked Phillips to take her home; she could not leave by herself because she could not reach her mobility scooter. Phillips insisted that Adams hand over the money and Adams refused for several hours, until Phillips finally struggled with Adams and took the money. Phillips then drove Adams home, promising to repay the money, but she never did so.

II. Audrey Seitz
¶ 5 The second victim, Audrey Seitz, was 79 years old at the time of trial. Seitz had Alzheimer's and dementia and had no memory of the five years prior to trial. Seitz required 24-hour care, and her niece, Luanne Larson, hired Phillips as one of Seitz's caretakers. Larson left town for the Fourth of July weekend, leaving Seitz with Phillips. Larson returned to find that Phillips had left her caretaker position. Larson also discovered the bank had "flagged" Seitz's checking account based on withdrawal *591 activity. Larson learned that over the Fourth of July weekend there had been a bank withdrawal for $2,500 and a check for $4,783.20 cashed at a Money Tree check cashing location. Larson identified Phillips in a bank surveillance photograph that showed Phillips and Seitz at the bank on the day that the $2,500 was withdrawn. Evidence at trial also established that Phillips had escorted Seitz to the Money Tree and had persuaded her to cash the check.

III. Corinne Gunderson
¶ 6 The third victim, Corinne Gunderson, was 88 years old at the time of trial. Gunderson lived alone, but her son helped her around the house and monitored her finances. When Gunderson was walking home from the grocery store, Phillips approached and offered Gunderson a ride home. Phillips told Gunderson that employees at Gunderson's bank branch were stealing and that Phillips needed $7,500 to catch them. Gunderson agreed to give Phillips the money, and the two drove to a different branch where Gunderson withdrew $7,500, which Phillips pocketed. Phillips took Gunderson home and said that she would catch the thieving employees and then return the money. Phillips never repaid the money.

IV. Joy Ostrander
¶ 7 The fourth victim, Joy Ostrander, was nearly 93 years old at the time of trial. Ostrander's neighbors saw Phillips and her vehicle at Ostrander's house several times. One neighbor saw Phillips take Ostrander to Phillips's car and also saw Phillips arrive at Ostrander's house with two young girls. The neighbors also saw Phillips put on nurse's scrubs before entering Ostrander's house. Nobody had hired a nurse to care for Ostrander. Phillips's theft came to light when Ostrander called his 72-year-old girlfriend, Anne Lizotte, telling her that something bad had happened. When Lizotte arrived, Ostrander had $100 and said that a woman got a bunch of money and left him with just the $100. Ostrander told Lizotte that the woman had driven him to the bank and withdrawn money. Ostrander could not describe the woman specifically and did not know her name. Ostrander could not remember who took his money, or when she took it, or how much she took.
¶ 8 Ostrander's daughter, Karen Anderson, testified that Ostrander "usually" kept between $2,000 and $4,000 in a black case hidden in the basement of his house. 4 Verbatim Report of Proceedings (VRP) at 521. Anderson would count the money for Ostrander at least every other month. After Lizotte reported the incident to Anderson, Anderson found that Ostrander's black case had been rifled through and only $300 remained. Anderson did not report the theft immediately because Ostrander had misplaced his money in the past. But several weeks after finding that money was apparently missing from the case, Anderson discovered that $5,500 had been withdrawn from Ostrander's bank account, and she notified the police. A bank surveillance photograph showed Ostrander at the bank with a woman on the date of the withdrawal, and the combined testimony at trial demonstrated that this woman was Phillips.

V. Robert Hokenson
¶ 9 The fifth victim, Robert Hokenson, was 86 years old at the time of trial. He had a valid driver's license and was able to drive, although he suffered from memory problems due to a stroke. Hokenson's family helped with his finances, and would call almost daily and visit about once a week to ensure his well-being. When Hokenson was working outside, Phillips approached and asked him for $400, explaining that she needed to get her car out of impound and that her purse was locked inside. Hokenson agreed to help and Phillips followed Hokenson inside his house, taking an envelope with $1,200 in it from Hokenson's top dresser drawer. Hokenson's wife Virginia had found the envelope earlier that day and counted it, placing it in the dresser.[2]
*592 ¶ 10 After Phillips left, Virginia found that an envelope with $700 inside was also missing from his desk. Hokenson testified that were also five to six other envelopes in his dresser, each containing $300 to $400, and Virginia testified that none of them were in the dresser after Phillips left. After leaving his home, Hokenson drove to the bank with Phillips, with Hokenson driving part of the way. Hokenson withdrew $3,800 at the bank and Phillips took the money.[3] Phillips never returned Hokenson's money.

VI. Charges, Motions and Trial
¶ 11 On October 17, 2007, the State charged Phillips with eight counts of theft in the first degreeone count for stealing $5,000 from Adams (count I), two counts for stealing $4,783 and $2,500 from Seitz (counts II and III), one count for stealing $7,500 from Gunderson (Count IV), two counts for stealing approximately $2,000 from Ostrander's home and $5,500 from his bank account (counts V and VI), and two counts for stealing $3,300 from Hokenson's home and $3,080 from his bank account (counts VII and VIII). For each count, the State charged the aggravating factor that the defendant knew or should have known that the victim was particularly vulnerable or incapable of resistance. The State also charged the aggravating factor of abuse of a position of trust for the thefts from Seitz (counts II and III).
¶ 12 Before trial, the State filed an ER 404(b) motion to admit evidence of Phillips's past forgery and theft crimes against elderly and vulnerable victims in the 1980s. The State sought to admit evidence of Phillips's past convictions and a summary of the facts underlying each one. The trial court found the prior convictions admissible to show a common scheme or plan. During motions in limine, the trial court amended this ruling, ruling that the convictions would not be admissible unless Phillips testified that the victims consented to lend her money. The trial court ruled that if Phillips testified, the convictions would be admissible to impeach her, but if she did not testify, the convictions would be excluded.
¶ 13 At trial, in response to defense counsel's request for clarification, the trial court amended its order again, ruling that the prior convictions would be admissible not to impeach Phillips, but to rebut any material assertion by Phillips that the victims consented to lend her money. The trial court found that the prior convictions would be highly prejudicial and irrelevant unless Phillips first testified and made such a material assertion. The trial court ruled that the evidence would come in under ER 404(b), even though it was "sort of a hybrid" between ER 404(b) and ER 609. 5 RP at 670. The trial court ruled that the facts underlying the convictions that Phillips had pleaded guilty to (including the ages of the victims for those crimes) would be admissible along with the fact that Phillips agreed to pay restitution for other, uncharged crimes.
¶ 14 Before trial, the court held a competency hearing for Ostrander and Hokenson. Hokenson testified at the hearing, confidently recalling many details from the incident with Phillips, and the trial court found him competent.
¶ 15 Ostrander, however, could not remember his age, date of birth, address, or the color of his house. He remembered that his wife was dead, but he could not remember her name. He remembered the name of his daughter Karen, but he identified her as a friend. He did remember that his daughter helped him around the house. Ostrander said he was in court because "manno, it was the wife, got my money and just took it." 1 RP at 125. Ostrander recalled that a woman came to his house with some children and took whatever they wanted, but he could not remember the woman's name or what the woman looked like. Ostrander reported that the woman would take him places on a horse. He could not remember how long ago this was. Ostrander remembered that he kept money hidden in his home, though he could not remember how much the woman took. The trial court found that Ostrander was *593 able to relate basic facts about the incident and was therefore competent, but ruled that there would be another competency evaluation before Ostrander testified.
¶ 16 At trial, Ostrander's second competency hearing showed him to have approximately the same ability to relate basic facts. Ostrander repeated his statements that a woman came to his house and took things and that there were children with her. He also repeated his claim that he sometimes rode a horse to go places with the woman. The trial court again found that Ostrander could relate basic facts and that he understood his obligation to tell the truth, making him competent to testify. The trial court found that Ostrander's memory problems were a credibility issue for the jury.
¶ 17 Also at trial, Phillips objected to the State's plan to offer a photograph of Seitz, who did not testify.[4] Phillips argued that the photograph was not relevant and that it would prejudice her by invoking the jury's sympathy. The photograph in question shows Seitz in normal clothing in a home setting, smiling at the camera and not looking exceptionally frail or infirm. The trial court noted that there was nothing unduly prejudicial or sympathetic about the photograph. The trial court ruled that the photograph was admissible, finding that it was no more prejudicial than a victim-in-life photograph in a homicide case and that it would help identify Seitz in the bank photograph the State sought to admit.
¶ 18 Phillips did not testify or present any evidence at trial. Defense counsel stated that Phillips declined to testify because the trial court had ruled that her prior convictions would become admissible if she did. Defense counsel had advised Phillips that she needed to testify to preserve the issue of the admissibility of her convictions on appeal, but Phillips did not do so.
¶ 19 Before the close of trial, Phillips offered proposed jury instructions. Included in these instructions was proposed instruction six, which stated that, "A person is incompetent if he or she cannot understand the nature and consequences of their interaction with others." Clerk's Papers (CP) at 208. Also included was proposed instruction seven, which read, "Advancing age does not bestow upon an elderly person's family members some type of natural guardianship, as neither age nor eccentricity alone is enough to find incapacity." CP at 209. The trial court rejected proposed instruction six because it would confuse the jury, and because "incompetent" was not an issue included in the particular vulnerability instructions. The trial court rejected proposed instruction seven because it was confusing and unnecessary.
¶ 20 The jury found Phillips guilty of all eight counts of first degree theft. The jury also found the aggravating factor of particular vulnerability on all counts. The jury further found the aggravating factor of abuse of trust for counts II and III against Seitz.
¶ 21 At sentencing, defense counsel stated that if Phillips had testified, she would have said that she was in an abusive relationship at the time of the crimes and that she had taken the money in loans and had intended to repay them. The trial court found that this argument carried little weight because the evidence showed that Phillips did not appear to be in distress or under duress during the crimes. The trial court stated that the case "scream[ed] out" for an exceptional sentence because of the "extreme vulnerability and position of caretaker." 6 RP at 903. The trial court sentenced Phillips to the maximum 43 months on every count, and ran the sentences consecutively for a total of 344 months. Phillips appeals.

ANALYSIS

I. Prior ConvictionsPreservation on Appeal
¶ 22 Phillips asserts that the trial court erred by ruling that her prior convictions would be admissible if she testified. Phillips argues that the trial court erred by admitting the convictions to show propensity in violation of ER 404(b). Phillips has not preserved this issue for review.
¶ 23 Under ER 404(b), evidence of past crimes may be admitted for purposes *594 other than to show propensity, such as to rebut a material assertion. State v. Hernandez, 99 Wash.App. 312, 321, 997 P.2d 923 (1999) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 114, at 391, § 117 at 411 (3d ed. 1989)). Evidence admitted under ER 404(b) is substantive evidence that can usually be admitted in the offering party's case in chief and is not normally contingent on the defendant testifying.
¶ 24 Here, the State filed an ER 404(b) motion to admit evidence of Phillips's past forgery and theft crimes against elderly and vulnerable victims in the 1980s. The trial court ruled that although Phillips's past convictions would not be admissible for impeachment, they were admissible to rebut the material assertion that the victims consented to give her the money. The trial court ruled that this evidence was admissible under ER 404(b). The State argues that Phillips did not preserve her objection to the admissibility of this evidence because she did not testify.
¶ 25 The question presented is whether a defendant must testify to preserve an objection to ER 404(b) evidence when the admissibility of said evidence is contingent on the defendant testifying. Division I of this court addressed a similar question in State v. Mezquia, 129 Wash.App. 118, 127-32, 118 P.3d 378 (2005). There, the trial court ruled that evidence of the defendant's prior acts would be admissible under ER 404(b), but only if the defendant raised the issue of identity. Mezquia, 129 Wash.App. at 126-27, 118 P.3d 378. The defendant decided not to call the witness who would raise the issue, and the ER 404(b) evidence was never admitted. Mezquia, 129 Wash.App. at 127, 118 P.3d 378. The Mezquia court held that because the defendant failed to put on the witness and the ER 404(b) evidence was not admitted, the defendant had not preserved the issue for appeal. Mezquia, 129 Wash. App. at 131-32, 118 P.3d 378.
¶ 26 The Mezquia court analogized the situation to Luce v. United States, 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Mezquia, 129 Wash.App. at 127-32, 118 P.3d 378. In Luce, the Court decided that a defendant must testify to preserve an objection to the admissibility of evidence under FED.R.EVID. 609(a).[5] 469 U.S. at 42, 105 S.Ct. 460. The Court held that a defendant's testimony was necessary to create a sufficient record on appeal, reasoning that without the defendant's testimony, a reviewing court cannot say whether the State would have actually offered the offending evidence and cannot decide how prejudicial that evidence would have been. Luce, 469 U.S. at 41-42, 105 S.Ct. 460. The Court held that this rule would discourage defendants from attempting to "plant" reversible error in the proceedings. Luce, 469 U.S. at 42, 105 S.Ct. 460.
¶ 27 Here, as in Mezquia, the trial court ruled that ER 404(b) evidence was admissible only if the defendant put on a particular defense. 129 Wash.App. at 126-27, 118 P.3d 378. Because Phillips did not testify, we cannot predict exactly what would have been admitted at trial. Additionally, whether the convictions would have been used for an invalid ER 404(b) purpose is speculative. And allowing Phillips to challenge the admissibility of her convictions under ER 404(b) without testifying would arguably allow her to plant an error in her trial as the Supreme Court warned against in Luce. 469 U.S. at 42, 105 S.Ct. 460. We adopt Mezquia and hold that because Phillips has not preserved this issue for appeal, we will not consider it.

II. Prior ConvictionsRight to Present a Defense
¶ 28 Phillips further argues that the trial court's decision to admit her past convictions denied her the right to present a defense. We hold it did not.
¶ 29 Appellate courts review a claim of denial of constitutional rights de novo. State v. Drum, 168 Wash.2d 23, 31, 225 P.3d 237 (2010). We will consider manifest error affecting a constitutional right for *595 the first time on appeal. RAP 2.5(a). The state and federal constitutions guarantee a defendant's right to present a defense. See State v. Tracy, 128 Wash.App. 388, 397-98, 115 P.3d 381 (2005). Phillips argues that her right to present a defense was denied because had she testified, the State would have admitted her past convictions. We hold that the State's threat to rebut her testimony did not infringe on her right to present a defense. The right to present a defense guarantees that the defendant may present relevant, admissible evidence in her own defense, not that this evidence will stand unrebutted. See Tracy, 128 Wash.App. at 398, 115 P.3d 381. Furthermore, Phillips voluntarily decided not to testify, even after defense counsel advised her that she needed to testify in order to preserve the issue for appeal. Phillips's failure to present a defense was the result of her own informed decision, not any action by the State or the trial court, so her argument on this point fails.
¶ 30 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.[6]
We concur: QUINN-BRINTNALL, J., and WILLIAMS, J.P.T.
NOTES
[1] RAP 10.10(a)
[2] As Robert and Virginia Hokenson share the same last name, we refer to Virginia by her first name for clarity. We intend no disrespect.
[3] Virginia testified that the amount withdrawn was $3,800. The information, however, charged Phillips with stealing $3,080 from Hokenson. The bank documents showing the transaction are not in the record before this court.
[4] The State conceded that Seitz was incompetent and did not call her.
[5] Our Supreme Court adopted Luce as to ER 609(a) in State v. Brown, 113 Wash.2d 520, 540, 782 P.2d 1013 (1989).
[6] In the unpublished portion of this opinion, we reject Phillips's contentions that (1) admission of certain evidence and testimony was an error; (2) there was insufficient evidence to support her convictions; (3) there was insufficient evidence to support her exceptional sentence; (4) the trial court improperly instructed the jury; and (5) the trial court erred in arriving at the restitution amount. In addition, we reject all arguments raised in her statement of additional grounds.