# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47871-4-II |
| Respondent, | |
| v. | |
| MARY ALICE YOKEL, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Mary Yokel appeals her conviction for one count of possession of a controlled substance (hydrocodone). She argues that (1) the trial court misinterpreted former RCW 69.50.4013(1) (2012)[1] by concluding that the statutory language "a valid prescription" does not include a third party's valid prescription and (2) the trial court denied her the right to present a defense by excluding evidence of her daughter's valid Vicodin prescription at trial and declining to instruct the jury on the affirmative defense of lawful possession of a controlled substance.

---

[1] The pertinent language of the 2012 statute was unchanged by the statute's 2015 amendment.

We consider as a matter of first impression in the state of Washington whether an affirmative defense exists for an "ultimate user"[2] who possesses a controlled substance pursuant to a household member's valid prescription. We hold that former RCW 69.50.4013(1) provides such a defense. Accordingly, we reverse Yokel's conviction and remand for a new trial.

FACTS

On February 15, 2015, Officer Buddy Croy discovered Mary Yokel's car parked in front of a motel room. Yokel had an active arrest warrant. Officer Croy knocked on the motel room door and made contact with Yokel. He then arrested Yokel on the warrant and searched her person incident to arrest.

During the search, Officer Croy located one pill in Yokel's pants pocket and verified it was Vicodin, containing hydrocodone. The State charged Yokel with two counts of possession of a controlled substance.[3]

At trial, Yokel sought to introduce evidence that she possessed the Vicodin pursuant to her 16-year-old daughter's valid prescription. Yokel made an offer of proof that, on the day in question, she had taken two of the pills out of the bottle, gave one to her daughter, and put the other one in her pocket after determining that her daughter should not take two pills. The trial

___

[2] Former RCW 69.50.308 (2013). Former RCW 69.50.101(ss) (2013) defines an "ultimate user" as "an individual who lawfully possesses a controlled substance for the individual's own use or for the use of a member of the individual's household or for administering to an animal owned by the individual or by a member of the indivdidual's household." Similary, the definition of "ultimate user" was unchanged by the statute's 2015 amendment.

[3] Former RCW 69.50.4013(1). The second count of possession of a controlled substance was based on methamphetamine residue found in a glass pipe nearby. The jury found Yokel not guilty of this charge, and it is not part of this appeal.

court denied Yokel's motion to continue the case to allow her daughter to testify and further

granted the State's motion in limine to exclude any evidence regarding Yokel's daughter's valid

Vicodin prescription. The trial court stated:

> Well, you're not going to be allowed to [present the defense that Yokel had a valid prescription for her minor daughter], because the circumstances here are totally different than having the pill in the bottle and having the minor present or close.
>      . . . .
>      . . . Just because there is some circumstance under which it might be a legitimate defense does not mean that it's a legitimate defense under the facts as going to be presented here.
>      . . . .
>      Any mention of a prescription is out other than it' [sic] a prescription drug and there was no prescription for it for [Yokel]. . . .

Verbatim Report of Proceedings (VRP) July 16, 2015 at 17-18.

> In granting the State's motion in limine, the trial court said:

> [M]aybe I would allow that as a defense if [the circumstances were that] the police broke down the door just as she was handing the medicine to her daughter at the appropriate time, and then maybe we would—you'd be able to present that, but not under the circumstances here.

VRP July 16, 2015 at 17-18.

At trial, witnesses testified to the above facts. Yokel testified in her defense, but

she was not allowed to testify that she possessed the controlled substance for the purpose

of administering it to her daughter.

Yokel proposed a pattern form jury instruction directing the jury to find her not

guilty of possession of a controlled substance if it found the substance was obtained

No. 47871-4-II

directly from or pursuant to a valid prescription.[4] The trial court refused to give this instruction.

The jury found Yokel guilty of one count of possession of a controlled substance (hydrocodone). Yokel appeals.

ANALYSIS

This case presents the issue of whether former RCW 69.50.4013(1) includes an affirmative defense to an ultimate user in possession of a controlled substance pursuant to a household member's valid prescription. We agree with Yokel that former RCW 69.50.4013(1) permits an ultimate user to possess a household member's valid prescription for a controlled substance.[5]

I. FORMER RCW 69.50.4013(1) PROVIDES FOR AN ULTIMATE USER DEFENSE

Yokel argues the trial court misinterpreted former RCW 69.50.4013(1) by concluding the statute's affirmative defense did not apply to a person in possession of a controlled substance pursuant to a third party's valid prescription. Because Yokel presented sufficient facts to entitle her to an ultimate user defense, we agree.

We review interpretation of a statute de novo. *State v. Bunker*, 169 Wn.2d 571, 577, 238 P.3d 487 (2010). When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). In

---

[4] 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 52.02, at 1009 (3d ed. 2008).

[5] We recognize that the parties did not bring the ultimate user defense to the attention of the trial court. As a result, the trial court did not have the chance to rule on the State's motion with this defense in mind.

4

determining the legislature's intent, we must first examine the statute's plain language and ordinary meaning. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We consider the specific text of the relevant provision, the context of the entire statute, any related provisions, and the statutory scheme as a whole when analyzing a statute's plain language. *Evans*, 177 Wn.2d at 192.

We read a statute to give effect to all the language in the statute, without rendering any portion meaningless or superfluous, and we recognize that the legislature intends to use the words it uses. *J.P.*, 149 Wn.2d at 450. If there is more than one reasonable interpretation of the plain language, the statute is ambiguous. *State v. Conover*, 183 Wn.2d 706, 711-12, 355 P.3d 1093 (2015). When a statute is ambiguous, we engage in statutory construction to discern legislative intent. *Evans*, 177 Wn.2d at 192. In interpreting a statute, we avoid a reading that results in absurd results because "'it will not be presumed that the legislature intended absurd results.'" *J.P.*, 149 Wn.2d at 450 (quoting *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003) (Madsen, J., dissenting)). "Washington courts should construe the Uniform [Controlled Substances] Act in conjunction with decisions from other states that have enacted it." *State v. Ramirez*, 62 Wn. App. 301, 307-08, 814 P.2d 227 (1991) (citing RCW 69.50.603).

Former RCW 69.50.4013(1) provides an affirmative defense to a person who lawfully possesses a controlled substance obtained "directly from" or "pursuant to" a valid prescription. By including these different phrases in the statute, the legislature indicated its intent that each phrase have a different meaning. *State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994). Neither chapter 69.50 RCW nor Washington cases define "directly from" or "pursuant to" for purposes of former RCW 69.50.4013(1). The plain meaning of "directly from" a valid

prescription pertains to the possession of a controlled substance by the prescription holder. Lawful possession "pursuant to" a valid prescription, however, is not as clear. The plain language of the statute does not state who must hold the valid prescription; possession is arguably lawful if "pursuant to" a third party's prescription as well as one's own. Because of this ambiguity, we look to other, related statutes and former RCW 69.50.4013(1)'s statutory scheme to determine whose valid prescription possession must be pursuant to.

Former RCW 69.50.308 (2013), one of the Uniform Controlled Substances Act's statutes, allows practitioners to dispense controlled substances to an ultimate user pursuant to a prescription. The Act defines an "ultimate user" as

> an individual who lawfully possesses a controlled substance for the individual's own use or for the use of a member of the individual's household or for administering to an animal owned by the individual or by a member of the individual's household.

Former RCW 69.50.101(ss) (2013). This definition of "ultimate user" indicates the legislature's intent to allow an ultimate user to possess a controlled substance for the use of another household member. The legislature then limited the scope of an ultimate user's lawful possession of a controlled substance by requiring that possession be pursuant to a prescription. *See* former RCW 69.50.4013(1). Therefore, the legislature intended to provide an affirmative defense to ultimate users who possess a controlled substance pursuant to a household member's valid prescription.

Although the legislature did not expressly include the ultimate user defense in former RCW 69.50.4013(1), we hold that an ultimate user defense nonetheless exists. This is because interpreting former RCW 69.50.4013(1) as prohibiting ultimate users from lawfully possessing a controlled substance prescribed to another household member leads to an absurd result. Reading the statute in such a way criminalizes behavior that may involve a common caretaking function.

6

For example, a son who picks up his bedridden father's prescription medication or a mother who administers a prescription medication to her infant daughter would be in violation of the statute. Further, such an interpretation is contrary to the legislature's expressed intent in former RCW 69.50.308. Former RCW 69.50.308 specifically allows practitioners to *dispense* controlled substances to an ultimate user, who then necessarily possesses that controlled substance. It cannot be presumed that the legislature intended this absurd result.

The legislature has directed us to construe the Uniform Controlled Substances Act in conjunction with other states that have enacted it. RCW 69.50.603. Recognizing this directive, we note that we have found no other state with similar versions to Washington's Uniform Controlled Substances Act that has disallowed an ultimate user defense. Missouri and Iowa have enacted the same version of the Uniform Controlled Substances Act as Washington.[6] Missouri's and Iowa's statutes prohibiting the possession of a controlled substance are nearly identical to Washington's, permitting the lawful possession of a controlled substance if obtained "directly from, or pursuant to, a valid prescription." MO. REV. STAT. § 195.180.1 (1989); IOWA CODE § 124.401(5) (2014). Similar to Washington's definition, Missouri and Iowa define an ultimate user as "a person who lawfully possesses a controlled substance or an imitation controlled substance for his own use or for the use of a member of his household." Former MO. REV. STAT. § 195.010(40) (2001); *see also* former IOWA CODE § 124.101(30) (2009).

The Supreme Court of Missouri determined that its legislature intended to allow ultimate users to possess the prescriptions of household members, reasoning that a contrary conclusion

---

[6] *State v. Morrow*, 535 S.W.2d 539, 542 (Mo. Ct. App. 1976); *State v. Gallardo*, 871 N.W.2d 703, 2015 WL 5278948, at *6 (Iowa Ct. App. 2015).

7

would produce absurd results. *State v. Blocker*, 133 S.W.3d 502, 505 (Mo. 2004). Similarly, the Court of Appeals of Iowa applied *Blocker*'s reasoning in interpreting its controlled substance statute as including an ultimate user defense. *State v. Gallardo*, 871 N.W.2d 703, 2015 WL 5278948, at \*6-7 (Iowa Ct. App. 2015). The Iowa court recognized that possession of a controlled substance pursuant to a valid prescription was an exception to that offense. 2015 WL 5278948, at \*7-8 (citing *State v. Gibbs*, 239 N.W.2d 866 (Iowa 1976)).[7]

We hold that former RCW 69.50.4013(1) (2012)'s plain language includes an affirmative defense for ultimate users who lawfully possess a controlled substance pursuant to a household member's valid prescription. The plain language of the statute, taken with the statutory scheme of chapter 69.50 RCW, allows ultimate users to lawfully possess a household member's prescription for a controlled substance and, as a result, provides ultimate users with a defense to the possession. Therefore, the trial court misinterpreted former RCW 69.50.4013(1) in concluding it does not apply to ultimate users.

## II. RIGHT TO PRESENT A DEFENSE

Yokel argues the trial court denied her the right to present a defense by granting the State's motion in limine to exclude evidence that she obtained the Vicodin found in her pocket

---

[7] A number of other states have acknowledged an ultimate user defense to possession of a controlled substance as well. *Walker v. State*, 358 So. 2d 800, 808 (Ala. Crim. App. 1978) ("It should be noted that possession of a controlled substance by an 'ultimate user . . . does not constitute a violation of the Controlled Substances Act.'" (quoting ALA. CODE § 20-2-51)); *State v. Miller*, 2008 UT 61, 193 P.3d 92, 95-96 (2008) (finding temporary possession of pills belonging to another can constitute innocent possession).

through her daughter's valid prescription and declining to give the jury her proposed affirmative defense instruction on lawful possession.[8]   We agree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to present a defense to the crimes charged.  A defendant has the right to present admissible evidence in her defense and must show the evidence is at least minimally relevant to the fact at issue in her case.  *State v. Phillips*, 160 Wn. App. 36, 48, 246 P.3d 589 (2011).  Further, a defendant is entitled to a jury instruction supporting her theory of the case if there is substantial evidence in the record supporting it.  *State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009).

The trial court effectively barred Yokel from presenting a defense because it excluded all evidence regarding her daughter's prescription and declined to give her proposed affirmative defense instruction.  In light of our ruling above, the instruction and all evidence in support thereof should have been allowed at trial.  Accordingly, the trial court violated Yokel's constitutional right to present a defense.

---

[8] We recognize that Yokel did not present the trial court with the complete law on the ultimate user defense.  She sought only a valid prescription instruction, and this instruction, on its own, is not complete because it does not set forth the elements of an ultimate user defense.  Courts that have discussed this defense have required a defendant to show she was an ultimate user. *Gallardo*, 2015 WL 5278948, at *8 ("To come within the exception, the defendant would have to introduce some evidence establishing each of the following: (1) the controlled substance was obtained pursuant to a valid prescription; (2) the defendant came into lawful possession of the controlled substance; and (3) the defendant lawfully possessed the controlled substance for his or her own lawful use pursuant to a valid prescription or for the lawful use of a member of the defendant's household pursuant to a valid prescription.").

No. 47871-4-II

CONCLUSION

The trial court misinterpreted former RCW 69.50.4013(1) and, as a result, denied Yokel the right to present a defense. Therefore, we reverse Yokel's conviction and remand for a new trial.[9]

_Worswick, J._

Worswick, J.

We concur:

_Maxa, A.C.J._

Maxa, A.C.J.

_Melnick, J._

Melnick, J.

---

[9] Yokel also argues that the prosecutor committed misconduct and that one of her community custody conditions was unconstitutionally vague. Because we reverse Yokel's conviction, we do not reach these arguments.