# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GUENTHER and URSULA THOMAS, Husband and wife, | ) ) ) | No. 68407-8-I |
| Respondents, | ) ) | DIVISION ONE |
| v. | ) ) | |
| TASSO SCHIELKE, | ) ) | UNPUBLISHED OPINION |
| Appellant, | ) ) ) | |
| ULRIKE SCHIELKE, | ) ) | |
| Defendant | ) ) | FILED: April 29, 2013 |

LEACH, C.J. — Tasso Schielke appeals an order enforcing orders partitioning real property he owned with his wife and another couple. Because Schielke's arguments are either unsupported by authority, contrary to the record, or unpersuasive, we affirm.

## FACTS

In 1997, Tasso, his wife, Ulrike, and Guenther and Ursula Thomas jointly purchased 82 acres of waterfront property on Sinclair Island in Skagit County.

In December 2007, the Thomases filed this action to partition the property. The Thomases sought a partition by sale. Tasso Schielke sought a physical partition of the property.[1]

On July 17, 2009, the court held a hearing on the proposed partitions. Schielke proposed partitioning the property by evenly dividing the two inland lots and dividing the waterfront lot into one-third and two-thirds parcels. The size difference was due to a large restricted wetland area on the larger parcel.

An exhibit describing Schielke's proposal showed boundary lines superimposed on an aerial photograph of the property. It depicted a straight east-west line of partition on the waterfront lot running from the center of the beach stairs to the back boundary. The exhibit also included the following written description:

> Part A
> [S]maller part with big open building lot (~170k sq. feet), road entrance, watertower & dwell, workshop, generator, carport, gravel-pit, shared beach stairway
>
> Part B
> [B]igger part but mostly restricted wetland, hut, pond, solar, propane shad, shared beach stairway, right of way to entrance

A court-appointed referee testified that this partition would be equitable so long as the party proposing the partition agreed to let the other party choose

---

[1] Tasso's wife, Ulrike Schielke, did not agree that the property should be physically partitioned and gave a power of attorney to respondent Guenther Thomas. Ulrike died in July 2010, and her estate was substituted as a party.

either parcel. The Thomases' real estate expert testified that the partition was inequitable because one parcel had only one-third of the waterfront footage and the other had two-thirds. He believed parcel B had "a much greater value."

In closing argument, Schielke's counsel stated they were willing to let the Thomases pick either of the proposed parcels. The trial court ruled that the property should be physically partitioned in the manner proposed by Schielke. The Thomases then chose the larger parcel, parcel B. Their counsel indicated he would look into whether the property could be divided by quitclaim deeds and legal descriptions or whether a survey would need to be done.

In September 2009, the parties returned to court to enter an order of partition. The Thomases proposed an order that located the new boundary line in part by reference to features and amenities listed for each parcel in Schielke's trial exhibit 3. The proposed order also stated that the line would be "located so as to provide approximately 170,000 square feet" to parcel A. Schielke's counsel objected to the proposed order, noting it created a jagged line around various features instead of using the straight boundary line depicted in exhibit 3. The court and counsel discussed the location of the line in relation to the stairs, a pond, and other features. The court ultimately proposed the following:

> THE COURT: Let me ask this . . . . If we tell the surveyor here's what we want to accomplish. We want to accomplish a parcel that's approximately 170,000 square feet in parcel A. We want . . . a line dividing [the waterfront lot] that if it can be accomplished and still put 170,000 square feet

in parcel A. We want that line to start at the top of the stairs and we want that line to run at least 15 feet from the south edge of the small pond and ask the surveyor to draw that line in a way that accomplishes those things if it can be done.

[SCHIELKE'S COUNSEL]: I would concur.

THE COURT: Does that satisfy everybody's concerns? Do you think it can do that?:

[SCHIELKE'S COUNSEL]: Absolutely.

THE COURT: Do you think 170,000 square feet can be obtained in parcel A with those perimeters?

[THOMASES' COUNSEL]: We believe so, Your Honor.

[SCHIELKE'S COUNSEL]: Yeah.

. . . .

THE COURT: In that case let's go ahead and get the survey and tell the surveyor we'd like a proposal for partition of [the waterfront lot] that starts the line at the top of the stairs and runs it west . . . .

. . . .

THE COURT: Runs it west clearing the small pond by at least 15 feet if possible. Okay.

The court then entered an order of partition, signed by both counsel, that required in part that the boundary line run at least 15 feet to the south of a "pond, solar panels, and hut" and be "located so as to provide approximately 170,000 square feet" to parcel A.

On March 15, 2010, Schielke moved for clarification of the order of partition. He argued that the Thomases were threatening to record a survey that drastically altered the agreed partition by moving the boundary line further into parcel A. The Thomases responded that the new survey simply followed the directions in the court's order of partition and moved for its approval and recording.

On July 2, 2010, the court entered an order of clarification directing a surveyor to prepare and submit a survey dividing the waterfront from the top of the beach stairs on a line as follows:

> [F]rom which point [the line] proceeds southerly and westerly to fall south of the hut near the beach by 15 feet, then proceeds westerly in such a manner so as to pass north of and not pass through the 100 foot protective circle around the well on the property, and which passes at least 50 feet south of the pond on the property, and which then proceeds further westerly to the west boundary of the parcel . . . which line provides an area of approximately 170,000 square feet [in parcel A].

On July 7, 2010, the Thomases moved for approval and recording of a new survey that followed the description in the order of clarification.

On August 5, 2010, the court held another hearing. Schielke's counsel pointed out, as he did in his written response to Thomases' motion, that everyone had mistakenly used a reference to the size of the buildable area on parcel A— 170,000 square feet—as a description of the size of the entire parcel. This resulted in a survey that "shrunk the lot way down." The court agreed there had been confusion and resulting inequity but pointed out that Schielke, through his counsel, had agreed in open court that parcel A was to be approximately 170,000 square feet.

The court also noted, however, that 170,000 square feet was at odds with the "great deal larger" parcel that would be created by the original straight

-5-

boundary line. The court noted that the most recent survey resulted in parcel B being three times larger than parcel A. The court ultimately ruled as follows:

> I know what you want me to do Mr. Souders is you want me to sign your order approving the survey. As I have explained for several reasons I'm not comfortable doing that and I need to think more about it. In the mean time it seems to me that it might be useful now that we actually have a survey and we actually [have] some square footage on paper and we actually have the items on paper that it might be useful for the two of you and your clients to talk about a way to resolve this because we've got some bad alternatives here. I can approve your survey and enter it. That leaves me with a really bad feeling about Mr. Schielke because I know what he proposed and what we did at the first hearing, it's not consistent with that. The other thing I can do is what Mr. Long wants which is undo this all the way back to the beginning and start over and reconsider your motion to partition by sale and decide whether that makes sense or if not then to start over with determining how to divide this parcel in equal value. Neither one of those is very attractive to me.

The court entered an order of clarification, stating that "the Court's prior order [of partition] should be considered further after the Court hears from the surveyor and reviews a transcript of the September 22, 2010 hearing."

In March 2011, the Thomases filed a motion to enforce the court's order of partition. The court denied the motion and directed the parties to set a hearing date.

On July 21, 2011, the parties returned to court. The court expressed its intent to reach a resolution that day and proposed that the parties either call witnesses and have the court rule on the matter or attempt to mediate a

resolution. The court noted that if the parties chose mediation and failed to agree, the court would have to recuse from trying the case. Following a recess, counsel informed the court that the parties would attempt a mediation.

When the mediation failed, the judge recused, and the Thomases renewed their motion to enforce the order of partition. Following a hearing before a new judge, the court granted the motion to enforce. It found that "there is an enforceable order for partition" and that the order, as clarified by the order of clarification, was "clear and reflects an enforceable agreement." But the court also found that there was a discrepancy between the July 2010 survey and the language of the clarified order of partition. The court noted that "the first drawing as apparently used in this case anticipated a straight line of division, after accounting for certain specifically noted physical features." The court also found

> that at the point it lies south of the pond, if the line then proceeded directly westerly to the boundary of the parcel rather than jogging southwesterly, that in such case there would be no discrepancy as between the language of the enforceable agreement and order and the straight line shown on the first drawing apparently used in this case; and
> NOTING that while this will provide more than 170,000 square feet in the southerly portion of the partition, that this is nonetheless in agreement with the language of the enforceable order and agreement, in that the language of such order provides for "approximately" 170,000 square feet, and thus allows flexibility as to the actual size.

The court then ordered that the survey be corrected to reflect this finding. This substantially increased the size of parcel A beyond 170,000 square feet.

Schielke appeals.

DECISION

The parties initially dispute whether the order of partition and the order clarifying the order of partition are final, unappealed orders that can no longer be challenged or reviewed. We need not resolve this dispute because even assuming the orders are reviewable, Schielke fails to demonstrate error.

Schielke first contends the courts below erred in failing to enter findings of fact as to whether the proposed division was fair and equitable. But he cites no authority requiring such findings when partition is based on an agreement of the parties. Arguments unsupported by pertinent authority need not be considered, and we decline to consider this argument further.[2]

Schielke next contends "[t]here is no support in the record for the line of partition." He is mistaken. The final line of partition is supported by the agreement reflected in Schielke's original proposal and the parties' subsequent agreed modifications to, or interpretations of, that proposal in open court. Schielke's agreement that parcel A was approximately 170,000 square feet, the agreed location of the line in relation to features on the ground, and the agreed westerly direction of the line after passing the pond together support the line imposed by the enforcement order.

---

[2] Cook v. Brateng, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010).

Schielke argues alternatively that any settlement agreement was not enforceable. Noting that settlements are not enforceable absent agreement to all material terms,[3] he claims he never agreed to anything other than a straight east-west boundary line. The record belies this claim. The order of partition, which is signed by both parties, describes a line that runs 15 feet south of a pond, solar panels, and a hut. It further states that the line will be "located so as to provide approximately 170,000 square feet to the south of that dividing line. This agreed description results in an irregular boundary line that differs significantly from the straight line Schielke originally proposed.[4] Although the judge who entered the order of partition had misgivings about the fairness of this agreed line, she correctly pointed out that Schielke's counsel agreed to it in open court and signed the subsequent order.[5]

Schielke also contends the enforcement order is inconsistent with statements the original judge made at the August 5, 2010, hearing and that there are no findings that the partitioned parcels are equal. Again, these arguments are not supported by authority and need not be considered. In addition, we note

_____

[3] Veith v. Xterra Wetsuits, LLC, 144 Wn.App. 362, 366-67, 183 P.3d 334 (2008).

[4] Schielke does not argue on appeal that this agreement was unenforceable due to a mutual mistake.

[5] We note that Schielke failed to provide a complete record for review of this issue as there are no transcripts or narrative reports of the April 13, 2010, and June 17, 2010, hearings that preceded the court's order of clarification. RAP 9.2; Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988) (appellant has burden of providing adequate record for review).

that despite her misgivings about the effect of her prior orders, the original judge did not vacate them or order a new trial. To the extent she could be said to have orally disavowed her prior orders, oral rulings have "no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment."[6]

Affirmed.

_Leach, C.J._

WE CONCUR:

_Dwyer, J._                    _Appelwick, J._

---

[6] Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963).