IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 41318-7-III |
| CHRISTINE KIMBALL, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| JOEL KIMBALL, | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, A.C.J. — In this appeal, Joel Kimball[1] requests vacation of a final

parenting plan's findings of domestic violence and emotional abuse by challenging the

temporary parenting plan. No legal basis supports Joel's request for relief because he

failed to properly designate the record and the error he now complains of was invited by

him. Accordingly, we decline review of the majority of Joel's claimed errors and

conclude the judge who entered the temporary orders was not biased against him.

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

BACKGROUND

Joel and Christine Kimball married in 1991.  They have 10 children.  Christine

obtained a temporary protection order in January 2023 and immediately moved out of the

family home with the parties' four minor children.  In April 2023, Christine filed for a

legal separation and moved for entry of temporary family law orders, including a

temporary parenting plan.  Christine filed two of her own declarations in support of her

motion and proposed a parenting plan.  Joel opposed Christine's motion and filed a

competing declaration as well as his own proposed parenting plan.  One of the parties'

adult daughters also filed a declaration.

Christine proposed the court limit Joel's parenting time to supervised visits based

on Joel's history of domestic violence and a long-term emotional or physical problem

that affected his ability to parent.  Christine also requested the court order Joel to submit

to a domestic violence evaluation and a mental health assessment.

In response, Joel asked the court to find that Christine had a history of domestic

violence, but he did not propose the court limit Christine's decision-making authority or

residential time with the children.  Instead, Joel requested the parties receive equal

residential time with their children.

On October 13, 2023, Judge Steven Dixon presided over the hearing on

Christine's motion for temporary orders.  A transcript from the hearing was provided for

our review.  At the hearing, Christine's attorney requested the court limit Joel's parenting

time based on the contents of declarations from the parties' adult children and Christine's

mother that were filed in Christine's protection order case. Joel did not object to

Christine's attorney's descriptions, or the court's consideration, of those declarations.

Through his attorney, Joel argued that the court should enter his proposed

parenting plan and, in support of his position, attempted to rely on a law enforcement

body camera recording. Christine objected to the court reviewing the recording. The

judge sustained Christine's objection without hearing the basis for the objection and

without providing a reason for its ruling. The judge reviewed copies of documents from

the protection order hearing and the temporary protection order.

Judge Dixon then ruled on the motion for temporary orders. He found Joel "guilty

of domestic violence by emotional abuse and control." Verbatim Rep. of Proc. (VRP) at

26. He further found that Joel "condones violent racism and Nazism," which "is abusive

emotionally." VRP at 26. Based on these findings, Judge Dixon largely adopted

Christine's proposed residential schedule. The court did not impose supervised visits, did

not limit Joel's decision-making authority, and did not require domestic violence or

mental health evaluations, reasoning the evaluations would not be successful or serve any

purpose.

The court later entered a temporary parenting plan. The temporary parenting plan

was not designated for our review. However, the appellate record includes the transcript

from a hearing on Joel's successful motion for reconsideration of his temporary child

support obligation. Joel uses this transcript to support his contention that the trial court's temporary parenting plan decision is also erroneous.

On June 6, 2025, Judge Roger Sandberg entered a final parenting plan. According to the court's findings and conclusions about the marriage, "[b]oth parents agreed to and signed the *Parenting Plan*." Clerk's Papers (CP) at 81. The final parenting plan limits Joel's parenting time and decision-making authority based on findings that he engaged in child abuse and domestic violence. Like the temporary parenting plan, the final parenting plan contains findings that Joel "condones violent racism and nazi-ism which the court found as a matter of fact and law to be abusive emotionally" and that he was "guilty of Domestic Violence by emotional abuse and control." CP at 70-71. The final parenting plan limits Joel's parenting time to five-hour visits on Mondays and major holidays every other year. It also requires Joel to obtain a domestic violence evaluation and to comply with recommended treatment for six months before seeking to modify the parenting plan.

Joel timely appeals.

## ANALYSIS

On appeal, Joel assigns error to numerous provisions of a temporary parenting plan entered by Judge Dixon. Specifically, Joel argues Judge Dixon: (1) "abused his discretion in making his Temporary Family Law Orders finding, which was made permanent in the June 6, 2025 Findings of Fact and Conclusions of Law;" (2) "erred by

No. 41318-7-III
*In re the Marriage of Kimball*

improperly including declarations from a different case, and also improperly excluding

critical evidence from the October 13, 2023 Temporary Family Law Orders hearing;"

(3) "erred when basing his finding of 'domestic violence by emotional abuse and control'

upon insufficient evidence;" (4) "erred when basing his finding of 'domestic violence by

emotional abuse and control' upon Joel 'condoning violent racism and nazism;'" and

(5) "abused his discretion when adopting Christine[']s extreme 3% / 97% child custody

split, which is not in the best interests of the minor Kimball children." Br. of Appellant at

25, 29, 33, 35, 37 (emphasis omitted). Because Joel failed to provide a proper record for

our review and invited the error he now complains of on appeal, we decline review of

these claimed errors. Joel further contends that Judge Dixon was "partial, prejudiced and

biased" against him. Br. of Appellant at 6. We disagree.

ADEQUACY OF THE RECORD

To the extent Joel challenges Judge Dixon's oral rulings, rather than his written

temporary order, we decline review. A trial court's oral opinion is nothing more than an

oral expression of its informal opinion. *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d

1187 (1998). "An oral opinion 'has no final or binding effect unless formally

incorporated into the findings, conclusions, and judgment.'" *Id*. (quoting *State v.

Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966)). Because Judge Dixon's oral

ruling was not a final and binding decision, it is not subject to our review.

5

To the extent Joel is challenging the temporary parenting plan's findings of fact and conclusions of law, we decline review as he has failed to designate the document on which his assignments of error rely. *See* RAP 9.6(a), (c)(1)(D). An appellant bears the burden of filing a designation of clerk's papers with the appellate court clerk that must include "any written order or ruling not attached to the notice of appeal, of which a party seeks review." RAP 9.6(a), (c)(1)(D). This court will not review an appellant's assignments of error where the appellant has failed to provide us with an adequate record of the proceedings below. *Yatsuyanagi v. Shimamura*, 57 Wash. 42, 42-43, 106 P. 503 (1910); *see also Cowlitz Stud Co. v. Clevenger*, 157 Wn.2d 569, 573-74, 141 P.3d 1 (2006).

Without the temporary parenting plan, the record before us is inadequate to review Joel's alleged errors. Thus, we decline review. *See Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

INVITED ERROR

We further decline review of Joel's claimed errors because he invited any alleged error when he agreed to the provisions of the final parenting plan.

"The invited error doctrine prohibits a party from setting up an error below and then complaining of it on appeal." *In re Marriage of Morris*, 176 Wn. App. 893, 900, 309 P.3d 767 (2013). Joel strategically agreed to the provisions of the final parenting

plan. The invited error doctrine prohibits Joel from complaining about findings contained within the final parenting plan to which he agreed.

Moreover, on appeal, Joel challenges only the trial court's temporary parenting plan. A temporary parenting plan is a plan for parenting children pending the resolution of a legal separation action. RCW 26.09.004(4). The temporary parenting plan terminates when a final parenting plan is entered. *See* RCW 26.09.060(10)(c).

FRIVOLITY OF APPEAL

Lastly, Joel's appeal is frivolous. An appeal is frivolous if no reasonable possibility of reversal exists and reasonable minds could not differ about the issue raised. *Johnson v. Jones*, 91 Wn. App. 127, 137, 955 P.2d 826 (1998). No arguable legal basis entitles Joel to relief from the final parenting plan based on alleged errors concerning the temporary parenting plan. No alleged error related to the temporary parenting plan could possibly affect the provisions of the parties' agreed final parenting plan. The temporary parenting plan, to which Joel assigns error, terminated when the trial court entered the parties' agreed final parenting plan in June 2025. Because the temporary parenting plan is no longer in effect, this court cannot provide Joel relief from the order. Further, Joel has no arguable legal basis for relief due to him inviting any alleged error that flowed from the temporary parenting plan into the final parenting plan.

PURPORTED BIAS OF JUDGE

Joel next claims Judge Dixon was biased against him. We disagree.

The trial court is presumed to perform its functions regularly and properly without bias or prejudice. *Tatham v. Rogers*, 170 Wn. App. 76, 96, 283 P.3d 583 (2012). A party asserting a violation of the appearance of fairness doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the judge that is contrary to the party asserting the violation; mere speculation is not enough. *Id*.

Joel does not produce evidence that Judge Dixon had a personal or pecuniary interest that would have motivated him to rule against Joel. Joel's limited residential time under the temporary parenting plan is not evidence that Judge Dixon was operating under a conflict of interest. Judge Dixon's past CJC discipline for his conduct in an unrelated case is not sufficient evidence that Judge Dixon was biased against Joel either. The CJC guides and assists judges in maintaining the highest standards of judicial conduct and regulates their conduct through the Commission on Judicial Conduct. *State v. Williams*, 15 Wn. App. 2d 841, 848, 480 P.3d 1145 (2020). "The [CJC] is not intended 'to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court.'" *Id*. at 848-49 (quoting CJC Scope 7).

The trial court made child abuse and domestic violence findings against Joel. Those findings are supported by declarations submitted to the court without objection by Joel. Once the court made its child abuse and domestic violence findings,

No. 41318-7-III
*In re the Marriage of Kimball*

Washington law required the court to limit Joel's residential time with his children. RCW 26.09.191(4)(a)(ii), (iii). Thus, Joel fails to establish that the temporary parenting plan that Judge Dixon ordered was the product of bias.

CONCLUSION

We decline review of the majority of Joel's claimed errors and conclude that Judge Dixon was not biased against him.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, A.C.J.

WE CONCUR:

_____
Murphy, J.

_____
Hill, J.

9